OPINION
{¶ 1} Tarif Hourani appeals from a judgment of the Montgomery County Court of Common Pleas, which denied, on the merits, his motion for relief from judgment, pursuant to Civ. R. 60(B), and held that Michael Osgood had superior title to certain real estate.
 {¶ 2} On July 7, 1995, Hourani purchased the real property located at 1949 East Fourth Street in Dayton, Ohio, and owned by Vern E. Gray, at a foreclosure sale. Hourani did not record his deed at that time, and he did not receive tax bills for the property. On May 16, 2002, the Montgomery County Treasurer initiated a foreclosure action based on delinquent real estate taxes, naming Vern E. Gray as the defendant. On October 10, 2002, the court entered a default judgment in favor of the Montgomery County Treasurer and ordered the sale of the property. A Sheriff's sale was held on December 26, 2002, at which Michael P. Osgood purchased the property for $30,100. The trial court confirmed the sale on January 28, 2003. Osgood tendered the purchase price to the Sheriff, and the Sheriff tendered a deed for the property. Osgood recorded the deed on February 13, 2003.
 {¶ 3} On March 28, 2003, the Montgomery County Treasurer notified the court that Hourani claimed title to the property and that he had not been named as a defendant. On May 13, 2003, Hourani moved to intervene in the action, and on June 24, 2003, he filed a motion for relief from the October 10, 2002, judgment, pursuant to Civ.R. 60(B). On July 31, 2003, Hourani recorded his deed. Following a hearing on both the motion for relief from judgment and the merits of Hourani's defense, the court concluded that Hourani had met the procedural requirements for his Civ.R. 60(B) motion but that he had not established his defense — that Osgood was not a bona fide purchaser without knowledge of the prior unrecorded deed — on the merits. The court concluded that Osgood, a bona fide purchaser without knowledge, had superior title to Hourani. It therefore held that Hourani's ownership interest was terminated and the recording of his deed a nullity, and that Osgood's deed would be recognized as the only deed conveying the interest of Vern Gray in the property.
 {¶ 4} Hourani raises two assignments of error on appeal.
"The trial court erred in overruling Mr. Hourani's motion to vacate the decree of foreclosure."
 {¶ 5} In his first assignment of error, Hourani claims that the trial court erred in overruling his motion for relief from judgment.
 {¶ 6} "To prevail on [a] motion under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTE Automatic Elec.,Inc. v. ARC Industries, Inc. (1976), 47 Ohio St.2d 146, 150,351 N.E.2d 113. "A meritorious defense is one which, if proved, would entitle a party to the relief requested." Williamson v. SarandaConsolidated Ltd. (Dec. 14, 1989), Montgomery App. No. 11507. All three elements must be established, and "the test is not fulfilled if any one of the requirements is not met." Strack v.Pelton (1994), 70 Ohio St.3d 172, 174, 1994-Ohio-107,637 N.E.2d 914.
 {¶ 7} We review the trial court's decision for abuse of discretion. Id.; Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77,514 N.E.2d 1122. The term "abuse of discretion" connotes more than a mere error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
 {¶ 8} Hourani claims that the trial court abused its discretion by overruling his Civ.R. 60(B) motion after it found that his motion was "timely filed, that grounds therefore existed and that a meritorious defense was proffered." Hourani argues that the court's findings should have compelled the court to sustain his motion, as a matter of law. He further argues that sustaining the motion should have resulted in the decree of foreclosure and resulting sale being "undone," thus entitling him to file an answer in the proceedings or to settle his tax bill with the county treasurer.
 {¶ 9} We disagree. Although Hourani's motion ostensibly sought relief from the October 10, 2002, judgment, his motion did not proffer a defense to the county treasurer's foreclosure complaint, such as lack of notice. (Hourani asserted "mistake in the identity of the proper parties" as a basis for satisfying Civ.R. 60(B)(1).) Rather, he asserted that "[t]he ultimate issue is: Who is the fee owner of 1949 East Fourth St., Dayton, Ohio." Specifically, he stated: "While the parties may disagree on various factual and legal aspects of this matter, they are in agreement that the outcome of this matter is controlled by Ohio Revised Code § 5301.25(A) * * *." As noted by Osgood, at the evidentiary hearing on the Civ.R. 60(B) motion, the parties stipulated that "the real issue in this case, * * * if the movant is entitled to relief under rule 60(B), * * * is whether or not Mr. Osgood is a bona fide purchaser without knowledge and having paid for real estate at a sheriff's sale." The parties further stipulated that the court would address the merits of Hourani's asserted defense (i.e., whether Osgood was a bona fide purchaser without knowledge) in conjunction with the Civ.R. 60(B) motion. At the hearing, Hourani's testimony related solely to the issue of whether Osgood had had actual knowledge of his ownership in the property. During closing argument, Hourani's counsel asserted that the lack of a bona fide purchaser without knowledge was his defense entitling him to relief from judgment.
 {¶ 10} Although couched as a defense to the default judgment, it is clear that Hourani's stated defense related to the judgment of sale and not to the judgment of foreclosure. In essence, Hourani has argued that the sale to Osgood was improper, not that the county treasurer should not have received a default judgment. Having argued in his motion that the issue before the court was whether he or Osgood had title to the property and having stipulated to that being the ultimate issue before the trial court, Hourani cannot now complain that the trial court erred by acting in accordance with the stipulation. Once the trial court concluded that Hourani had met the three elements of a Civ.R. 60(B) motion, presumably as to the judgment of sale, the court did not err in proceeding to evaluate the merits of his proffered defense — the lack of a bona fide purchaser without knowledge.
 {¶ 11} Hourani's first assignment of error is overruled.
"The trial court erred in holding that Michael Osgood's title to the subject property was superior to tarif hourani's."
 {¶ 12} In his second assignment of error, Hourani claims that the trial court erred in concluding that Osgood was a bona fide purchaser without knowledge, pursuant to R.C. 5301.25(A). He asserts that Osgood had attended the 1995 foreclosure sale and knew that Hourani had purchased the property. Hourani further contends that the two men had had numerous contacts relating to the property for years thereafter. Osgood responds that Hourani's deed was not recorded and thus did not appear on the title searches performed prior to the Sheriff's sale on December 26, 2002. In addition, Osgood argues that the contacts that he had with Hourani between the time that Hourani purchased the property in 1995 and when he purchased it in 2002 did not provide him with actual knowledge of Hourani's interest in the real estate.
 {¶ 13} R.C. 5301.25(A) provides: "All deeds * * * shall be recorded in the office of the county recorder of the county in which the premises are situated, and until so recorded or filed for record, they are fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed or land contract or instrument." "Recordation gives constructive notice to all persons dealing with the land of properly recorded instruments in the chain of title." Option One Mtge. Corp. v.Boyd (June 15, 2001), Montgomery App. No. 18715, citing Thamesv. Asia's Janitorial Serv., Inc. (1992), 81 Ohio App.3d 579,587, 611 N.E.2d 948. An unrecorded deed is unenforceable against a subsequent bona fide purchaser for value without actual knowledge of the prior unrecorded deed. See id; Tiller v.Hinton (1985), 19 Ohio St.3d 66, 69, 482 N.E.2d 946 (unrecorded easement is unenforceable against subsequent bona fide purchaser without notice of unrecorded easement). However, a bona fide purchaser is bound by the prior deed if he has actual knowledge of it.
 {¶ 14} It is undisputed that Osgood was a subsequent "purchaser for value." Moreover, it is undisputed that Hourani did not record his deed until July 31, 2003, more than six months after Osgood purchased the property and more than five months after Osgood recorded his deed. Although the 1995 tax foreclosure sale was a public record, Hourani has not argued on appeal that Osgood had constructive knowledge of Hourani's purchase.[1]
Rather, the parties focus upon whether Osgood had actual knowledge of Hourani's ownership interest in the Fourth Street property.
 {¶ 15} In Emrick v. Multicon Builders, Inc. (1991),57 Ohio St.3d 107, 566 N.E.2d 1189, the supreme court made clear that a "should have known" or "could have known" test is inappropriate in determining the existence of actual knowledge of an unrecorded interest in property (in that case, a land use restriction). Id. at 111. Although actual knowledge may be inferred from the circumstances, "it is not a defense in support of a claim based on an unrecorded deed to show that [a purchaser] took title under circumstances which ought to have excited apprehension and inquiry in the mind of a prudent and reasonable man." Id. at 109 (quoting Varwig v. Cleveland, Cincinnati, Chicago St. LouisRR. Co. (1896), 54 Ohio St. 455, 468, 44 N.E. 92, 94.). R.C.5301.25(A) requires absence of knowledge of the unrecorded deed, not "absence of that which might induce inquiry." See id.
 {¶ 16} At the hearing, Hourani testified that he had been introduced to Osgood at the July 7, 1995, foreclosure sale by Sam Byredkdar, a friend who works in the business of rehabilitating houses. Hourani stated that he was introduced to Osgood as "the person who's going to purchase the property." Hourani indicated that Osgood invited him to become a member of the Huffman Historic District and voluntarily made a request to get a title search for Hourani. Hourani stated that he made approximately $60,000 in improvements to the property, and that he had talked with Osgood about the color scheme for the home. Hourani testified that, during 2000, he spoke with Osgood several times about finding a potential buyer for the property. In 1998 or 1999, he spoke with Osgood about the fence and bushes along their common property line. Hourani also testified that Osgood saw him on the property in November 2002, when he (Osgood) was campaigning for political office.
 {¶ 17} Osgood testified that he owned property next to, catercorner to, and down the street from 1949 East Fourth Street, and that he made his living rehabilitating property. He indicated that, at the 1995 foreclosure sale, he had spoken with a man named Sam, who had assured him that the property would be restored quickly and properly and according to all city codes. Osgood indicated that he had agreed not to bid against Sam, because Sam had a history of restoring properties in the St. Anne's Historic District. He stated that he believed Sam had purchased the property. Osgood testified that he did not know that Hourani had purchased the property in 1995. Osgood stated that Hourani never showed him a deed to the Fourth Street property.
 {¶ 18} Osgood indicated that he did not remember inviting Hourani to his home to receive his Huffman Historic District membership card. He stated that he did not believe that property ownership in the Huffman Historic District was required for membership. He testified that, several years before, he had seen Hourani at the property. He further stated that he had talked with Hourani about finding a buyer for the premises in 1999 or 2000. Osgood did not recall discussing the bushes along their common property line or the fence along that line, but said that he has had to maintain the fence line and bushes for years. He testified that he had called Hourani several years ago when he was concerned that a burglary had occurred at the house. Osgood further testified that he had assumed for several years that the property had been abandoned. Finally, Osgood testified that between fifteen and twenty people bid on the property on December 26, 2002.
 {¶ 19} After hearing the testimony and arguments of counsel, the trial court orally ruled that Osgood was a bona fide purchaser, pursuant to R.C. 5301.25(A). The court stated that although there was evidence that Osgood knew or should have known of Hourani's interest in the property soon after Hourani purchased it, that knowledge "`evaporated' when it didn't appear there was activity at the premises." The court found that it reasonably appeared to Osgood that the property had been abandoned, and that he reasonably obtained a title search, which did not reveal Hourani's interest in the property. The court therefore found that Hourani had not met his burden of establishing that Osgood was not a bona fide purchaser without knowledge of the prior unrecorded deed. The court issued its written decision on November 7, 2003.
 {¶ 20} We find that the trial court's conclusion is amply supported by the record. It is undisputed that Osgood never saw Hourani's deed to the property. The trial court was free to credit Osgood's testimony that he believed that Sam Byredkdar had purchased the property rather than Hourani. Although the record reveals that Osgood had various conversations with Hourani about the upkeep of the property, potential purchasers of the real estate, and membership in the Huffman Historic District, these communications merely provided inquiry notice to Osgood. In Ohio, inquiry notice does not rise to the level of actual notice. As stated, supra, the supreme court has held that actual notice, not inquiry notice, is required to extinguish the protections of R.C.5301.25(A).
 {¶ 21} In addition, the record supports a conclusion that Osgood did not have actual notice of Hourani's interest at the time that he purchased the property. In Emrick, the supreme court reiterated that a purchaser's actual knowledge must exist at the time of the purchase. Quoting its decision in Morris v.Daniels (1880), 35 Ohio St. 406, 416, it stated:
 {¶ 22} "* * * It appears to us, that all the statute requires of the subsequent purchaser is honesty of purpose at the time of making the purchase. It is true, that proof of such knowledge at a date anterior to the purchase tends to prove its existence at the time of purchase. Such is unquestionable [sic] the inference, but the strength of the inference is weaker or stronger according to the circumstances. By the lapse of many years, it is weakened or may cease to exist altogether. The circumstances under which the knowledge was acquired, whether or not it would likely make a lasting impression, should also be considered. * * *" Id. at 111
 {¶ 23} In the present case, Osgood testified that he had believed that Sam had purchased the property and that Hourani's interest "was some kind of partnership arrangement or something with Sam, at best." He emphasized that he had talked with Sam at the 1995 sale and that Sam had assured him that the house would be rehabilitated. Referring to the relationship between Hourani and Sam, he stated: "I didn't know who held deed. I didn't know who had title. But I always thought it was Sam." It is undisputed that, on several occasions, as late as in 2000, Osgood referred Hourani to individuals who might be interested in purchasing the Fourth Street property. Osgood further testified that nothing occurred in the two or three years prior to the December 26, 2002, sale that would have led him to believe that Hourani owned the property. Specifically, he testified:
 {¶ 24} "COURT: What you're saying is if Hourani owned it at one time, you assumed he sold it, no longer had anything to do with it, the property was left abandoned."
 {¶ 25} "OSGOOD: Absolutely."
 {¶ 26} Based on the record, the court could have reasonably found that Osgood did not have actual knowledge of Hourani's interest in the property at the time of the 2002 sale. Accordingly, the trial court did not err in finding that Osgood was a bona fide purchaser without knowledge.
 {¶ 27} The second assignment of error is overruled.
 {¶ 28} The judgment of the trial court will be affirmed.
Fain, P.J. and Brogan, J., concur.
[1] At the hearing on Hourani's motion, William Frapwell, an attorney and Assistant Vice President of the Chicago Title Insurance Company, testified that he had examined Chicago Title's records regarding 1949 East Fourth Street for Osgood prior to the foreclosure sale. Frapwell indicated that his title examination did not reveal that Hourani had any ownership interest in the property. James Hickey testified that he had examined the title to the property for the Montgomery County Prosecutor's Office prior to the commencement of the 2002 tax foreclosure proceedings and that he did not discover Hourani's ownership interest. Frapwell testified, however, that the title examiner discovered the 1994 case, Bank One v. Vern Gray, saw the confirmation entry filed, but did not look further into the case.