OPINION
{¶ 1} Plaintiff-Appellant Etta Brown appeals the Mount Vernon Municipal Court's June 28, 2004, Judgment Entry finding that Defendant-Appellee had been granted a life-estate in the subject real estate in this matter by Appellant and her late husband.
 {¶ 2} Defendant-Appellee is Carles Brown.
 STATEMENT OF THE FACTS AND CASE {¶ 3} Plaintiff-Appellant Etta Brown is the mother of Defendant-Appellee Carles Brown.
 {¶ 4} In 1954, Plaintiff-Appellant and her late husband purchased the real estate which is the subject of this case. Between 1954 and 1959, Plaintiff-Appellant's husband was injured in a motorcycle accident. As a result of such accident, he was unable to operate the farm which had been established on the property.
 {¶ 5} In 1959, when Defendant-Appellee was 15 years old, Plaintiff-Appellant and her late husband, made a promise to him that if he operated the farm for them, they would grant him the right to live on the land for life. Defendant-Appellee dropped out of high school at the end of his freshman year to run said farm for his parents, which he continued to do for the next 44 years. Defendant-Appellee was injured while performing his farm duties and was in declining health due to such injuries and having been stricken with cancer. Due to the changes in his health, Defendant-Appellee was only able to perform some of his previous duties, including but not limited to pasturing and feeding livestock and repairing and maintaining the equipment.
 {¶ 6} Between 1959 and 2004, Defendant-Appellee was presented with at least three opportunities to take employment outside of the farm. On each occasion, he was persuaded to stay with the promise of the continued right to live on the farm during his lifetime and to inherit same upon the death of his parents.
 {¶ 7} During this 44 year time period, Defendant-Appellee had resided in a single room on the second floor of the farmhouse of Plaintiff-Appellant even after he was married and had two children, who have since graduated from high school.
 {¶ 8} On March 31, 2004, Defendant-Appellee was served with a three-day Notice to Leave the Premises for his failure to pay rent by failing to perform his duties.
 {¶ 9} On May 3, 2004, Plaintiff-Appellant filed a Complaint in Forcible Entry and Detainer, seeking a writ of restitution and damages.
 {¶ 10} On May 21, 2004, Defendant-Appellee filed his Answer.
 {¶ 11} On June 7, 2004, the matter proceeded to hearing before the trial court for the purposes of determining the right to possession of the subject property.
 {¶ 12} At said hearing, the trial court heard testimony on behalf of Appellant from Appellant Etta Brown and her daughter Sylvia Hamilton. The trial court also heard testimony on behalf of Appellee from Appellee's brothers, Evan Brown, Jerry Brown and Avery Brown.
 {¶ 13} On June 28, 2004, the trial court filed its Findings of Fact and Conclusions of Law along with its Judgment Entry.
 {¶ 14} Appellant now appeals, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 15} "I. Trial court erred by granting affirmative relief to the defendant-appellee without defendant-appellee having filed a counterclaim."
 {¶ 16} "II. The trial court erred by conducting a trial on the merits on the case instead of merely determining whether or not plaintiff-appellant was entitled to a writ of possession, in violation of Ohio Revised Code Section 1923.09."
 I. {¶ 17} In her first assignment of error, Appellant argues that the trial court erred in granting Appellee affirmative relief when he had not filed a counterclaim. We disagree.
 {¶ 18} Appellant, in the case sub judice, filed an action in forcible entry and detainer, in response to which Appellee filed an Answer.
 {¶ 19} "An action of forcible entry and detainer is an action at law based upon contract. It is an action to obtain possession or repossession of real property which had been transferred from one to another pursuant to contract. * * * Such a proceeding is not an action to determine ownership of the title to the property." Behrle v. Beam (1983),6 Ohio St.3d 41, 44. Further, under Ohio law, the action is "a remedy which is purely statutory and which is unknown at common law, and it may be defined as a summary civil proceeding provided by statute in certain enumerated cases, intended to affect only the question of possession of real property. * * * The purpose of the forcible entry and detainer statutes is to provide a summary, extraordinary, and speedy method for the recovery of the possession of real estate in the cases especially enumerated by statute." Fodor v. First Natl. Supermarkets, Inc. (1992),63 Ohio St.3d 489, 494, quoting 37 Ohio Jurisprudence 3d (1982) 78-80, Ejectment, Section 67.
 {¶ 20} Upon reviewing Appellee's Answer, we find that such constitutes a counterclaim by asserting an equitable "defense" seeking affirmative relief, and that therefore, the municipal court was, pursuant to the provisions of R.C. 1901.18(C), vested with equitable jurisdiction to enforce all rights, legal and equitable, involved in such action. In such case, the determination of the existence of a contractual right to possession is not limited to the face of the contract, but such court may inquire into the validity and enforceability of the provisions thereof.
 {¶ 21} It has been held that where an action in forcible entry and detainer is based upon a written lease, the municipal court has jurisdiction pursuant to R.C. 1901.18(C) to hear and determine all legal and equitable remedies necessary or proper for a complete determination of the rights of the parties to the contract. Lauch v. Monning (1968),15 Ohio App.2d 112.
 {¶ 22} Furthermore, the Ohio Supreme Court has held that municipal courts have been granted equitable jurisdiction coextensive with that of the common pleas courts to fully deal with all aspects and claims that may arise in actions at law based upon contract. Behrle v. Beam (1983),6 Ohio St.3d 41, 44.
 {¶ 23} R.C. 1923.081, appears to contemplate the possibility of counterclaims in any action in forcible entry and detainer for residential premises. It permits joinder of causes of action for possession, past rent due, damages, and counterclaims raised by defendant, in one trial. Forney v. Climbing Higher Enterprises, Inc.
(2004),158 Ohio App.3d 338, 345.
 {¶ 24} Although this case began as an action for forcible entry and detainer, the case centered around whether Appellee had been granted a life estate in the property in question. Appellant's right to forcible entry and detainer depended wholly on the court first ruling on the equitable relief sought by appellee. Here, if appellee established his right to a life estate, appellant's case would be at an end. Thus, the trial court did not err in holding a bench trial. See Rutledge v.Wallace, 2002 WL 31243511.
 {¶ 25} In the instant case, the trial court denied Plaintiff-Appellant's action for eviction because it found that a verbal agreement in the form of a life estate existed between appellant and appellee.
 {¶ 26} Under Ohio law, no interest in real property shall be assigned or granted except by deed or note in writing signed by the party assigning or granting it. This statute, known as the statute of frauds, is set forth in R.C. 1335.04, and provides, in relevant part:
 {¶ 27} "No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law."
 {¶ 28} Nevertheless, Ohio courts have recognized that the equitable doctrines of partial performance and promissory estoppel can remove an agreement covering an interest in real property from the operation of the statute of frauds. Saydell v. Geppetto's Pizza Ribs Franchise Sys.,Inc. (1994), 100 Ohio App.3d 111, 121, 652 N.E.2d 218. These exceptions exist "in recognition that the historical purpose behind the statute is to prevent the furtherance of fraud." McCarthy, Lebit, Crystal Haiman Co., L.P.A. v. First Union Mgt., Inc. (1993),87 Ohio App.3d 613, 623, 622 N.E.2d 1093.
 {¶ 29} In Beaverpark Assoc. v. Larry Stein Realty Co. (Aug. 30, 1995), Montgomery App. No. 14950, the court cogently explained the doctrine of partial performance in relation to the statute of frauds: "In order to remove a contract from the statute of frauds pursuant to the doctrine of part performance, the party that is relying on the agreement must have undertaken `unequivocal acts * * * which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties in status quo.' Delfino v. Paul Davies Chevrolet, Inc. (1965),2 Ohio St.2d 282, 287, 209 N.E.2d 194. Thus, a party seeking to establish part performance must demonstrate that he has performed acts in exclusive reliance on the oral contract, and that such acts have changed his position to his prejudice. Geiger v. Geiger (Nov. 16, 1993), Montgomery App. No. 13841. Generally, in cases involving real estate contracts, courts require acts such as possession, payment of consideration, and improvements on the land in order to find part performance of the contract. Id." Finally, partial performance will only defeat the statute of frauds if monetary damages would be insufficient. Gleason v. Gleason
(1991), 64 Ohio App.3d 667, 676, 582 N.E.2d 657.
 {¶ 30} It is well established that the weight to be given the evidence and credibility of witnesses are issues left to the sound discretion of the trier of fact, whose findings are presumptively valid. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. In the present case, the trial court found that Appellee has lived on, maintained and operated the farm of the subject property since 1959, that in order to obtain the life lease in that property he refused or turned down the opportunities for outside employment, performed the majority of the farming duties for no pay for forty-four years. Appellee testified that his understanding of the agreement was that in exchange for maintaining and operating the farm on the subject property, Appellee would receive a place to live for as long he lived.
 {¶ 31} Not only did Appellee testify as to the nature of the agreement between him and his parents, Appellee's brothers testified likewise.
 {¶ 32} Evan Brown stated that his mother told him that "he'd [appellee] be provided for the rest of his life and he'd have a place to live." (T. at 39).
 {¶ 33} Jerry Brown testified "[i]t was my understanding and the way my mother said it and father, that they wanted him to work on the farm, that they would provide him a home and money to live on, and he was to get the farm when dad and them was gone." (T. at 42).
 {¶ 34} Avery Brown testified he "heard `em both talk about it. He's supposed to doin' chores and he's suppose to have a place the rest of his life."
 {¶ 35} Appellant claims that since Appellee became injured, during farm operations, she has the right to evict him from the property because he is no longer performing his end of the agreement.
 {¶ 36} The trial court found Appellant's explanation of the parties' agreement to be not credible and found that the evidence did establish the creation of a verbal life lease which had been partially performed.
 {¶ 37} In light of the law as set forth above, we find that Appellee's verbal life lease in the property was not barred by the statute of frauds. Appellee clearly established that in reliance on the agreement to grant him a life estate in the property he operated the farm for his parents for the better part of forty-four years, foregoing other employments opportunities at their behest, for no monetary consideration. Appellee even married and raised two children while living in the "family" farmhouse, all four of them sharing one bedroom. These "unequivocal" acts are all referable to the agreement. We further find, that by these acts, Appellee changed his position to his detriment.
 {¶ 38} Appellee, as a life tenant, was entitled to the undisturbed possession of the land. See 2 McDermott, Ohio Real Property Law and Practice (3 Ed. 1966) 491, Section 11-63 D. Dudrow v. Traver, 1986 WL 589.
 {¶ 39} Appellant's first assignment of error is overruled.
 II. {¶ 40} In her second assignment of error, Appellant argues that the trial court erred in conducting a trial in this matter instead of just a hearing on the writ of possession. We disagree.
 {¶ 41} As stated previously, Appellant's right to forcible entry and detainer was dependent upon the trial court's determination as to the whether Appellee's established his right to life estate in the property. We therefore find, in the interest of judicial economy, the trial court did not err in holding a trial in this matter.
 {¶ 42} This Court does not find such a practice an abuse of discretion. Appellant's second assignment of error is overruled.
 {¶ 43} The decision of the Mount Vernon Municipal Court is affirmed.
Boggins, P.J., Gwin, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Mount Vernon Municipal Court, Knox County, Ohio, is affirmed. Costs assessed to appellant.