OPINION
{¶ 1} Gilda Bishop appeals from the trial court's entry of judgment in favor of appellee Stanley Rice on her forcible entry and detainer complaint.
 {¶ 2} Bishop advances two assignments of error on appeal. First, she contends the trial court erred in denying her relief even though she met the statutory requirements for an order directing Rice to vacate the subject property. Second, she claims the trial court erred in awarding Rice an interest in the property through adverse possession.
 {¶ 3} The present appeal stems from Bishop's purchase of residential real estate on Pinnacle Road in Jefferson Township. Bishop bought the property from an individual named Gary Speakman. At the time of the transaction, Rice was storing several large trucks in a pole barn on the property. After closing on her purchase, Bishop served Rice with written notice to vacate the premises. He did not comply with the notice, however, because he believed he had a right to be on the property. As a result, Bishop filed a forcible entry and detainer action, seeking restitution of the premises, attorney fees, costs, and compensation for Rice's use of, and unspecified damage to, the property.
 {¶ 4} The matter proceeded to a brief hearing in the Area One County Court of Montgomery County. Bishop testified that she signed a real estate contract with Speakman on April 15, 2005. Although she was unsure whether she had observed Rice's trucks in the barn before she signed the real estate contract, Bishop admitted that she had seen them prior to the May 16, 2005, closing. She denied knowing, however, that Rice previously had paid Speakman thousands of dollars to purchase the property.
 {¶ 5} For his part, Rice testified that in January, 2002, he had entered into an oral land contract with Speakman to buy the Pinnacle Road property. Rice further testified that he had paid Speakman $53,000 under the oral agreement before Speakman sold the property to Bishop.
 {¶ 6} In closing argument, Rice's attorney asked the trial court to find that Rice had a right to store his trucks in the barn, arguing as follows:
 {¶ 7} "What we're looking for is just as Mr. Rice said, is a place to store his trucks, and because he's paid a lot of money to do that. Maybe he has no rights, and I don't know that this Court has the ability to put him in an ownership position, but it certainly has the right to conform this occupancy into some type of a long-term lease and protect his rights, even if they're in terms of leasehold rights instead of ownership rights[.]" (Transcript at 18-19).
 {¶ 8} The trial court subsequently ruled against Bishop on her forcible entry and detainer action. In a brief written decision, it reasoned:
 {¶ 9} "An owner takes title to real property subject to any legal encumbrances to that property. The Plaintiff knew that another party, the Defendant, was in adverse possession of at least a portion of that property at the date of purchase. Whether the Defendant's interest is a leasehold with option to purchase or a simple leasehold, the Plaintiff took title knowing that Defendant was in possession. The Plaintiff's failure to deal with this issue of adverse possession when she had knowledge defeats her ability to take possession from a party claiming a prior right of possession from a previous owner. See 80 OJur3d 216. It appears that Plaintiff's relief if any lies in [a quiet title] action under Chapter 5303 of the Revised Code." (Doc. #12 at 2).
 {¶ 10} In her first assignment of error, Bishop asserts that she met the requirements to obtain relief under the forcible entry and detainer statute. In particular, she contends Rice's oral agreement with Speakman gave him no enforceable rights against her. In response, Rice contends he retained an interest in the property by virtue of his oral land contract. He asserts that this interest was enforceable against Bishop, at least in equity, because she was aware of his possession of the pole barn when she bought the property from Speakman. As a result, he argues that Bishop was not entitled to restitution of the property through a forcible entry and detainer action.
 {¶ 11} Upon review, we find Bishop's first assignment of error to be persuasive. She sought relief under R.C. §1923.02(A)(5), which provides that a defendant is subject to a forcible entry and detainer action "[w]hen the defendant is an occupier of lands or tenements, without color of title, and the complainant has the right to possession of them[.]"
 {¶ 12} The key issue here is whether Rice was occupying the pole barn with or without "color of title." Although the forcible entry and detainer statute does not define the phrase, we have recognized that "[a]n individual acquires color of title when a written conveyance appears to pass title but does not do so, either from want of title in the person making it, or the defective mode of conveyance." Glaser v. Bayliff (Jan. 29, 1999), Montgomery App. No. 98-CA-34. The principle that color of title involves a written conveyance is widely followed. See, e.g., Montieth v. Twin Falls United Methodist Church, Inc.
(1980), 68 Ohio App.2d 219, 221 ("By definition, an individual acquires color of title by the following means: `* * * something in writing which, upon its face, professes to pass title, but which does not do it, either from want of title in the person making it, or the defective mode of the conveyance that is used, but such writing must not be so plainly and obviously defective as that no man of ordinary capacity would be misled by it.'");Tarry v. LaGrange Lodge No. 399 (Sept. 26, 1990), Lorain App. No. 90CA004808 at *3 (finding no color of title because the appellee lacked a writing purporting to grant it the land at issue); Capers v. Camp (Ga. 1979), 244 Ga. 7, 11,257 S.E.2d 517, 521 ("Color of title is `a writing on its face professing to pass title, but which does not do it, either from want of title in the person making it * * *. To entitle the possessor to the benefit of his color of title, there must be a writing[.]'");Nixon v. Foltz (Va.Cir.Ct. Nov. 20, 1984), 1984 WL 276356 at *2 ("[S]ome writing purporting to vest title is essential to color of title."); Holub v. Titus (Ark. 1915), 120 Ark. 620,180 S.W. 218 ("We think appellant had no color of title until he secured his quitclaim deed, prior to which time he claimed to have had possession under a parol contract to convey the land to him. * * * [B]ut where the claim of color of title depends on the voluntary conveyance of one person to another, that conveyance must be in writing."); Armijo v. Armijo (N.M. 1887), 4 N.M. 57,13 P. 92, 94 ("Color of title, strictly speaking, cannot rest in parol. There must be a document of some sort. * * * As there was no paper title of any kind introduced in evidence to support the claim of title set up by defendants, it follows that their possession was not under color of title[.]").
 {¶ 13} In the present case, Rice has no written conveyance from Speakman purporting to pass title to the Pinnacle Road property. He relies instead on an oral land contract. Therefore, his occupation of the pole barn is without color of title and is in contravention of Bishop's right to possess it by virtue of her deed. As a result, the trial court erred in denying Bishop restitution of the premises under R.C. § 1923.02(A)(5).
 {¶ 14} Although the foregoing analysis is sufficient to resolve the present dispute, we note too that the trial court's ruling rests on an erroneous factual finding. In its written decision, the trial court characterized Rice's interest in the property as either a "leasehold with option to purchase or a simple leasehold." The record is devoid of testimony, however, that Rice's interest in the property was a leasehold at all. The only evidence on the issue came from Rice himself, who professed to have an interest in the property under an oral purchase contract. Thus, whatever obligations a buyer of land such as Bishop may have vis-a-vis a leaseholder, they are not implicated here.
 {¶ 15} The proper inquiry is whether a vendee in possession under an oral land contract has any enforceable rights as against a subsequent purchaser who buys the property from the vendor with knowledge of the vendee's possession but without knowledge of the oral land contract. The answer to this question is found in R.C. § 5301.25(A), which provides that an unrecorded land contract is "fraudulent, so far as relates to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of such * * * land contract[.]"
 {¶ 16} Because Rice's land contract with Speakman was oral, it necessarily was unrecorded. Moreover, the record contains no evidence that Bishop knew of the land contract before she purchased the Pinnacle Road property. She testified that she merely had seen Rice's trucks there. Although it might be argued that Bishop's observation of the trucks imposed on her some duty to inquire into the circumstances surrounding their presence, the language of R.C. § 5301.25(A) provides otherwise.
 {¶ 17} Under the statute, an unrecorded land contract is fraudulent as to a subsequent purchaser who has no knowledge of it. When an interest in land is unrecorded, the knowledge referred to in R.C. § 5301.25(A) is actual knowledge at the time of purchase. Inquiry notice is insufficient. Montgomery CountyTreasurer v. Gray, Montgomery App. No. 20254, 2004-Ohio-2729, at ¶ 20-21; see also Emrick v. Multicon Builders, Inc. (1991),57 Ohio St.3d 107, 109, quoting Varwig v. Cleveland, Cincinnati,Chicago St. Louis R.R. Co. (1896), 54 Ohio St. 455, 468
("`Where it appears that the party was a purchaser for value it is not a defense in support of a claim based on an unrecorded deed to show that he took title under circumstances which ought to have excited apprehension and inquiry in the mind of a prudent and reasonable man. No other view will give effect to the statute. Its words make the absence of knowledge of the release at the time of the purchase the test; not absence of that which might induce inquiry.'"). Given that Rice's oral land contract must be treated as fraudulent under R.C. § 5301.25(A), we conclude that he has no enforceable rights or interest in the Pinnacle Road property as against Bishop, a bona fide purchaser who took without knowledge of the land contract.
 {¶ 18} Rice's reliance on Endersby v. Schneppe (1991),73 Ohio App.3d 212, and Brown v. Brown, Knox App. No. 04CA000018,2005-Ohio-1838, does not persuade us otherwise. Both cases are readily distinguishable. In Endersby, the appellant contracted to purchase land from the appellee. At the time of the transaction, the appellant knew that the appellee had leased part of the land to a third-party. Moreover, in the purchase contract, the appellant expressly assumed the seller's obligations under the lease. Not surprisingly, the appellate court held that the appellant took the property subject to the third-party lessee's rights. Endersby, 73 Ohio App.3d at 214-215. Unlike the buyer in Endersby, however, Bishop took the Pinnacle Road property without knowledge of the oral land contract between Rice and Speakman.
 {¶ 19} In Brown, a mother commenced a forcible entry and detainer action against her son to remove him from the family farmhouse. The son defended against the action by claiming that his mother and deceased father years earlier had granted him an oral life estate in exchange for his work on the farm. The issue on appeal was whether the son's performance under the agreement for more than forty years took the case outside the statute of frauds. Unlike Brown, the issue before us is not whether an oral agreement is enforceable between Speakman and Rice based on the doctrine of partial performance. Rather, the issue is whether the oral agreement gives Rice any enforceable rights as against Bishop, who took the Pinnacle Road property without knowledge of the oral land contract. Brown does not address this issue.
 {¶ 20} Based on the reasoning set forth above, we hold that the trial court erred in denying Bishop relief on her forcible entry and detainer action. The record demonstrates that Rice is an occupier of the Pinnacle Road property without color of title and that Bishop has a right to possession of it by virtue of her deed. Therefore, she is entitled to restitution of the premises under R.C. § 1923.02(A)(5). Bishop's first assignment of error is sustained.
 {¶ 21} In her second assignment of error, Bishop contends the trial court erred by awarding Rice an interest in the property through adverse possession. This argument stems from the following language in the trial court's decision:
 {¶ 22} "Whether the Defendant's interest is a leasehold with option to purchase or a simple leasehold, the Plaintiff took title knowing that Defendant was in possession. The Plaintiff's failure to deal with this issue of adverse possession when she had knowledge defeats her ability to take possession from a party claiming a prior right of possession from a previous owner." (Doc. #12 at 2).
 {¶ 23} Based on our review of the trial court's decision, we do not interpret it as finding that Rice had acquired an interest in the Pinnacle Road property through the doctrine of adverse possession. The trial court did not discuss the elements of an adverse possession claim, and the doctrine plainly has no applicability here.[1] Rather than actually holding that Rice had an interest in the property through the doctrine of adverse possession, we believe the trial court merely was noting Bishop's awareness that his trucks occupied the property she was purchasing. Accordingly, we overrule Bishop's second assignment of error.
 {¶ 24} Having sustained Bishop's first assignment of error, however, we reverse the judgment of the Area One County Court of Montgomery County and remand the cause for further proceedings consistent with this opinion.
 {¶ 25} Judgment reversed and cause remanded.
Fain, J., and Donovan, J., concur.
[1] If for no other reason, an adverse possession claim by Rice necessarily would fail because he did not possess the pole barn for the requisite twenty-one year period. Beener v. Spahr (Dec. 15, 2000), Clark App. No. 2000-CA-40.