[Cite as *Farmer v. PNC Bank, N.A.*, 2017-Ohio-4203.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

DEVIN A. FARMER

    *Plaintiff-Appellee*

v.

PNC BANK, N.A., et al.

    *Defendants-Appellees*

and

JOSEPH KISTNER

    *Defendant-Appellant*

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 27149

Trial Court Case No. 2015-CV-1877

(Civil Appeal from
Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of June, 2017.

. . . . . . . . . .

ANDREW M. ENGEL, Atty. Reg. No. 0047371, THOMAS W. KENDO, JR., Atty. Reg. No. 0058548, 7925 Paragon Road, Centerville, Ohio 45459
    Attorneys for Defendant/Cross-Claimant/Appellant-Joseph Kistner

H. TOBY SCHISLER, Atty. Reg. No. 0068306, 255 East Fifth Street, Suite 1900, Cincinnati, Ohio 45202
    Attorney for Defendant/Cross-Claimant/Appellee – PNC Bank, N.A.

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant/Cross-Claimant/Appellant, Joseph Kistner, appeals from a trial court judgment granting a motion for sanctions and judgment filed by Defendant/Cross-Claimant/Appellee, PNC Bank, N.A. ("PNC"). Kistner contends that the trial court erred in granting judgment against him, in assessing damages against him, and in dismissing his cross-claims against PNC.

{¶ 2} We conclude that the trial court erred in failing to provide Kistner with a reasonable opportunity to be heard regarding the motion for sanctions, which resulted in a default judgment against Kistner, an award of damages against Kistner, and dismissal of Kistner's cross-claims against PNC. As a result, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

I. Facts and Course of Proceedings

{¶ 3} In April 2015, Devin Farmer filed a complaint against Joseph Kistner, PNC, Samuel Whitaker, and Martha Kline. The complaint was based on Famer's purchase of a property located on Olson Drive in Kettering, Ohio. Kistner had previously owned the property and had granted a mortgage in 2005 to National City Bank, a division of National City Mortgage of Indiana. The complaint alleged that PNC was the successor by assignment to National City Mortgage and a stakeholder.

{¶ 4} According to the complaint, National City had assigned the mortgage to Mortgage Electronic Registration System ("MERS") in 2006, and MERS had then assigned Kistner's mortgage to Watermark Financial Partners ("Watermark") in August 2011. In late September 2011, PNC filed a foreclosure action against Kistner in

Montgomery County Common Pleas Court (Case No. 2011-CV-07060), but the case was dismissed for lack of standing in August 2012. Shortly after the dismissal, Samuel Whitaker signed a release of the mortgage, as nominee for Watermark, and the release was filed in Montgomery County, Ohio, property records on August 15, 2012.

{¶ 5} The complaint further alleged that Watermark was not doing business in August 2012, that Whitaker was not affiliated with Watermark, and that Kistner had fraudulently obtained the release. Kline was the individual who had notarized Whitaker's signature on the release.

{¶ 6} According to the complaint, Kistner then executed and delivered a general warranty deed to Farmer for the Olson Drive property on December 31, 2012. Kistner received more than $70,000 for the sale of the property, but did not remit any money to PNC or anyone else, to satisfy the mortgage. Farmer's general warranty deed for the property was filed on January 1, 2013.

{¶ 7} In the complaint, Farmer asked for a declaration of her rights in the property and a determination of her rights as a bona fide purchaser. She also asked for damages from Kistner for breach of the warranty covenants, and for damages from Kistner, Whitaker, and Kline for fraudulent conduct in connection with the release.

{¶ 8} In May 2015, PNC filed an answer in which it stated that it was a successor by assignment from National City Mortgage. PNC denied that it had authorized any release, and denied that Farmer's alleged status as a bona fide purchaser should have an effect on its mortgage. In addition, PNC filed cross-claims for contribution and indemnity against Kistner, Whitaker, and Kline, to the extent that any liability were found against PNC, or if any determination of rights negatively affected PNC's mortgage.

{¶ 9} Kistner filed a pro se answer to the complaint, as well as a cross-claim against PNC. The cross-claim alleged fraud and concealment in connection with the 2011 foreclosure action PNC had filed; fraud, unclean hands, and concealment regarding the various assignments of the mortgage since 2005; violation of public policy by MERS (which was not a party); and estoppel and laches with respect to assignments of the mortgage, including a "Corrective Assignment" executed by a nominee for PNC and filed in the Montgomery County, Ohio, property records on February 15, 2013. PNC filed an answer to the cross-claim in June 2015, and asserted various affirmative defenses.

{¶ 10} Between June and September 2015, Kistner, Kline, and Whitaker engaged in various actions that hindered discovery. In early June 2015, the trial court set a telephone scheduling conference for June 24, 2015. After Kistner's co-defendant, Kline, moved for summary judgment based on the fact that she had never met Kistner and had simply notarized Whitaker's signature, Kistner filed a motion to continue the scheduling conference until the trial court ruled on the summary judgment motion, even though the motion had nothing to do with the claims against him.

{¶ 11} Both Farmer and PNC then filed motions under Civ.R. 56(F), asserting that discovery was needed before they could reply to the pending motions.[1] On July 10, 2015, the trial court granted the Civ.R. 56(F) motions, stressing that discovery was needed, and that an "uncorroborated, self-serving affidavit" was "deemed insufficient to establish the absence of any genuine issue of material fact where the opposing parties

---

[1] "Pending motions" refers to the fact that Whitaker had also filed a motion for summary judgment on June 23, 2015, claiming his actions were merely ministerial as a notary public, and were at Kistner's direction. Whitaker additionally took various actions to hinder discovery.

have not yet been afforded an opportunity to explore the underlying facts through discovery." (Emphasis sic.) Docket Summary, Case No. 26911, Doc. #47, p. 6.[2] On the same day, the court also denied Whitaker's motion for an extension of time to respond to discovery until after the court had ruled on all pending motions. The court again stressed that the defendants were required to submit to discovery before Farmer and PNC had to respond to summary judgment motions. In addition, this entry mentioned potential sanctions for failure to provide discovery. *Id.* at Doc. #46, p. 7.

{¶ 12} In the meantime, Farmer had filed notices to take depositions of Kistner, Kline, and Whitaker. The notices were filed on June 24, 2015, and the depositions were set for July 22, 2015. Thus, Kistner had nearly a month's notice of his deposition.

{¶ 13} On July 13, 2015, Kistner filed a motion for partial summary judgment based only on general assertions that he did not do anything wrong and lacked fraudulent intent. The following day, Farmer filed a Civ.R. 56(F) motion, which was granted by the court on July 30, 2015. Kistner also had filed a motion for a protective order on July 17, 2015, asking the court to stay discovery until it had ruled on all pending motions. Farmer responded on July 20, 2017, noting that counsel had received a letter from Kistner on

---

[2] The citation to Case No. 26911 refers to a prior appeal in this case, which involved two trial court orders. One order was filed on October 13, 2015, and the other was filed on October 15, 2015. We dismissed Kistner's appeal from the October 13, 2015 order because Kistner failed to timely appeal. *See Farmer v. PNC Bank, National Assn.*, 2d Dist. Montgomery No. 26911, pp. 8-9 (Mar. 31, 2016) (*Farmer I*). We also dismissed Kistner's appeal from the October 15, 2015 order for lack of a final appealable order. *Id.* at pp. 9-10. After the case was remanded, the trial court filed an entry resolving the remaining claims, and Kistner appealed from that final order. This resulted in the appeal that is now before us (Case No. 27149). In the current appeal, the clerk filed a new summary of docket and journal entries and papers. However, the new docket summary begins with Doc. #1, and contains only matters filed in the trial court after the case was originally appealed. As a result, there are two sets of docket and journal entries.

July 17, 2015, which asked that the July 22 deposition be moved from Columbus to Dayton. Notably, Kistner did not object to having his deposition taken. Counsel then accommodated Kistner by moving the deposition to Dayton. In addition, Farmer noted that the court had previously rejected the position that Kistner was taking about discovery being delayed until after the court had ruled on pending motions.

{¶ 14} On July 22, 2015, Farmer filed a supplemental response, informing the court that Kistner had agreed to be deposed on August 6, 2015, in Dayton. Farmer again asked the court to deny Kistner's motion for a protective order. The court denied Kistner's motion for a protective order on July 27, 2015, and stressed again that discovery must proceed. As was noted, on July 30, 2015, the court granted Farmer's Civ.R. 56(F) motion for an extension of time to reply to Kistner's motion for summary judgment. In this decision, the court emphasized that any delays in discovery were attributable to the defendants other than PNC, and reiterated its prior remark about uncorroborated, self-serving affidavits. Docket Summary, Case No. 26911, Doc. #67, p. 6.

{¶ 15} Farmer then filed a motion to compel discovery from Kistner on August 13, 2015. In the motion, Farmer stated that Kistner had appeared on August 6 for his deposition, but after being questioned for two hours, Kistner asked for counsel and stopped responding to questions. The deposition was adjourned and was to be reconvened after Kistner obtained counsel. However, despite efforts by Farmer to resolve the issue, Kistner had not provided Farmer with information about counsel. On August 21, 2015, Farmer filed a supplement to the motion to compel, noting that Kistner had not retained counsel. In fact, Kistner had sent a fax indicating that he had decided to continue with discovery and would likely retain counsel for trial.

{¶ 16} Farmer stressed that this "change of heart" did not justify Kistner's refusal to answer questions at his deposition. In addition, Farmer commented that the parties would incur additional time and travel expenses when the deposition was reconvened. As a result, Farmer asked for fees and costs, and also asked the court to grant the motion to compel to prevent this type of delay from occurring again.

{¶ 17} On August 25, 2015, Farmer filed a third notice of deposition, requiring Kistner to appear for a deposition on September 3, 2015, in Dayton, Ohio. Kistner then filed a notice that he would not be available on that date, and asked for another protective order. In a response filed on September 1, 2015, counsel for Farmer indicated that Kistner had not called to request a different date, and was, therefore, not entitled to relief under Civ.R. 26(C). Nonetheless, counsel stated that the deposition would be rescheduled because Kistner would not likely appear.

{¶ 18} On September 1, 2015, the trial court referred the matter to a magistrate for purposes of discovery. The court also granted Farmer's motion to compel discovery and denied Kistner's motion for protective order. At this point, the court ordered Kistner to appear for deposition at a time to be determined by the magistrate at a scheduling conference to be held on September 10, 2015. In its decision, the court stated that given the contentious history surrounding Kistner's deposition, the deposition should go forward under the court's strict supervision. The court further stated that the magistrate would oversee the remainder of the continued deposition. Kistner was also ordered to pay Farmer reasonable costs, including attorney fees, for obtaining the order.

{¶ 19} Finally, the court stated that:

Defendant Kistner is further cautioned that failure to timely and

completely comply with all terms of this Order **WILL** result in the imposition of additional sanctions in accordance with Civ.R. 37(B), which may include but are not limited to the issuance of an Order holding that the facts alleged in Plaintiff's complaint as against Defendant Kistner shall be taken as established for the purposes of this action, refusing to allow Defendant Kistner to oppose Plaintiff's claims or to support his own defenses to those claims, prohibiting Defendant Kistner from introducing certain evidence, striking out Defendant Kistner's answer or parts thereof, and/or rendering a judgment by default against Defendant Kistner, as well as being held in contempt of this Court and required to pay Plaintiff's additional reasonable expenses, including attorney fees.

(Emphasis sic.)   Docket Summary, Case No. 26911, Doc. #80, pp. 13-14.

**{¶ 20}** Subsequently, on September 18, 2015, Kistner filed a motion to continue the deposition scheduled for September 21, 2015 before the magistrate, because he had not been able to obtain counsel.   Farmer then filed a motion for sanctions on September 24, 2015.   In the motion, Farmer indicated that Kistner's motion was filed very late in the day on the Friday before the Monday that the deposition was scheduled.   The motion alleged that all parties, including Kistner, appeared on Monday, September 21, 2015, before the magistrate, who heard the motion for continuance.[3]   According to Farmer, Kistner repeatedly told the magistrate that he was unsure how to proceed, and the

---

[3] No transcript of this hearing is in the record.   Therefore, any description of comments made during the hearing are allegations, only.   Farmer's counsel did file an affidavit, stating only that she had attended a deposition on September 21, 2015, which turned into a continuance hearing, and outlined a few questions she would have asked Kistner. PNC did not file any affidavit with its motion for sanctions.

magistrate advised Kistner that he could answer questions or risk sanctions for failing to do so. Kistner refused to answer when the magistrate asked if he were refusing to proceed. After about 30 minutes, the magistrate stated that he would consider Kistner's position as a refusal to answer deposition questions, and asked for oral motions. At that point, Farmer and PNC orally moved for judgment and for an order dismissing all claims or defenses that Kistner had interposed. The hearing was then adjourned. Again, the recounting of these matters is based on allegations only, since the transcript is not in the record.

{¶ 21} PNC filed a response to Farmer's motion for sanctions, agreeing with the motion, but clarifying that to the extent any relief was ordered that would impair PNC's status as the first and best lienholder, that issue would have to be resolved. On October 5, 2015, PNC also filed its own motion for sanctions and judgment against Kistner, and incorporated the statement of facts in Farmer's motion. PNC further stated that during the deposition on August 6, 2015, Kistner admitted that he had no permission from PNC, or anyone related to the mortgage, to record the purported release of the mortgage. In addition, Kistner admitted that he still owed money on the mortgage and that he did not pay PNC any of the sale proceeds that he had received.

{¶ 22} On October 5, 2015, the trial court granted Farmer's motion for sanctions, struck Kistner's pro se answer and cross-claim, and entered judgment in favor of Farmer against Kistner. The court directed Farmer to file a proposed final judgment entry, which was filed and signed by the court on October 13, 2015. The court also granted PNC's motion for sanctions on October 8, 2015. At that time, the court entered judgment in PNC's favor on its cross-claim against Kistner and on the cross-claim that Kistner had

filed against PNC. The court directed PNC to file a proposed judgment entry, which was filed and signed by the court, apparently on the same day, on October 15, 2015.

{¶ 23} On October 15, 2015, Farmer dismissed her claims against Whitaker under Civ.R. 41(A), without prejudice.[4] Kistner then filed a notice of appeal from the October 13 and 15, 2015 judgments on November 13, 2015. This appeal was docketed as Case No. 26911 in our court. As noted previously, we dismissed the appeal in its entirety on March 31, 2016. *Farmer I*, 2d Dist. Montgomery No. 26911 (Mar. 31, 2016).

{¶ 24} We concluded that the notice of appeal was untimely with respect to the October 13, 2015 judgment, which contained a Civ.R. 54(B) certification and was a final appealable order on that date. *Id.* at pp. 8-9. However, we also concluded that the judgment of October 15 was not a final appealable order because it lacked a Civ.R. 54(B) certification, and PNC's cross-claims against Whitaker and Kline were still pending in the trial court. *Id.* at pp. 9-10.

{¶ 25} After remand, the trial court filed a decision on May 20, 2016, addressing our concerns. The court noted that Farmer made no direct claim against PNC, and that the issue of PNC's liability had been fully resolved in PNC's favor, with no liability having been assessed against PNC. Therefore, the court concluded that PNC's claims against Whitaker and Kline had been rendered moot by the judgment in PNC's favor, and dismissed those claims as moot. On June 15, 2016, Kistner timely appealed from the court's decision.

---

[4] Farmer had previously filed a Civ.R. 41(A) dismissal of her claims against Kline on August 21, 2015.

II. Did the Trial Court Err in Granting Judgment Against Kistner?

{¶ 26} Kistner's First Assignment of Error states that:

The Trial Court Erred in Granting Judgment Against Appellant.

{¶ 27} Under this assignment of error, Kistner argues that the trial court erred by entering judgment against him without providing him with notice and an opportunity to be heard.

{¶ 28} Civ.R. 37(B)(1) provides, in pertinent part, that:

If a party or a party's officer, director, or managing agent or a witness designated under Civ.R. 30(B)(5) or Civ.R. 31(A) fails to obey an order to provide or permit discovery, including an order made under Civ.R. 35 or Civ.R. 37(A), the court may issue further just orders. They may include the following:

* * *

(b) Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(c) Striking pleadings in whole or in part;

* * *

(e) Dismissing the action or proceeding in whole or in part;

(f) Rendering a default judgment against the disobedient party * * *.

{¶ 29} Trial courts have sound discretion in deciding what sanctions to impose under Civ.R. 37(B). *Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 47-48, 684 N.E.2d 319 (1997). An abuse of discretion occurs when "the court's attitude is

'unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). (Other citations omitted.)   Dismissal is a harsh sanction, and "should be reserved for cases when a party's conduct falls substantially below what is reasonable under the circumstances, evidences a complete disregard for the judicial system or the rights of the opposing party, or when the failure to comply with discovery orders is due to willfulness or bad faith."   (Citations omitted.)   *Foley v. Nussbaum*, 2d Dist. Montgomery No. 24572, 2011-Ohio-6701, ¶ 20.

{¶ 30} In *Ohio Furniture Co. v. Mindala*, 22 Ohio St.3d 99, 488 N.E.2d 881 (1986), the Supreme Court of Ohio considered whether the trial court had erred in dismissing an appellant's action with prejudice for failing to comply with discovery orders.   *Id.* at 101. The court first noted that Civ.R. 41(B)(1) permits dismissal of actions for failure to comply with court orders, " '*after notice to the plaintiff's counsel.*' "   (Emphasis sic.)   *Id.*, quoting Civ.R. 41(B)(1).   The court then held that "the notice requirement of Civ.R. 41(B)(1) applies to all dismissals with prejudice, including those entered pursuant to Civ.R. 37(B)(2)(c) for failure to comply with discovery orders.   A dismissal on the merits is a harsh remedy that calls for the due process guarantee of prior notice."   *Id.*

{¶ 31} The court stressed that "[n]otice of intention to dismiss with prejudice gives the non-complying party one last chance to obey the court order in full.   The moving party should not be allowed to circumvent this protection by simply framing his motion in terms of a Civ.R. 37 sanction.   Nor should a trial court on its own motion dismiss on the merits without prior notice."   *Id.*

{¶ 32} Subsequently, in *Quonset*, the Supreme Court of Ohio stated that "[f]or

purposes of Civ.R. 41(B)(1), counsel has notice of an impending dismissal with prejudice for failure to comply with a discovery order when counsel has been informed that dismissal is a possibility and has had a reasonable opportunity to defend against dismissal." *Quonset,* 80 Ohio St.3d 46, 684 N.E.2d 319, at syllabus.

{¶ 33} In *Hillabrand v. Drypers Corp.*, 87 Ohio St.3d 517, 721 N.E.2d 1029 (2000), the Supreme Court of Ohio explained that "[a] 'reasonable opportunity to defend against dismissal' under *Quonset* contemplates that a trial court allow the party opposing dismissal the opportunity to respond at least within the time frame allowed by the procedural rules of the court." *Id.* at 519-520. In *Hillabrand*, the local rules of court provided a 14-day time frame for responding to motions. *Id*. at 519. However, instead of allowing time for a response, the trial court granted the motion for sanctions two days after it was filed and on the same day the offending party had received the motion from the filing party. *Id.* As a result, the Supreme Court of Ohio reversed the dismissal and remanded the case for further proceedings. *Id.* at 520.

{¶ 34} In *Baker v. Edmonds*, 2d Dist. Clark No. 2002-CA-17, 2003-Ohio-1030, we held that the notice requirement in Civ.R. 41(B)(1) did not apply, because the case involved issuance of a default judgment as a sanction for the defendant's failure to appear for a deposition, rather than a dismissal. *Id*. at ¶ 21. We concluded, as a result, that *Ohio Furniture* (and by implication, its progeny), did not apply. *Id.*[5] We then stated that

---

[5] In contrast, other cases, including one in our own district, have held that "since proper notice is a prerequisite to any dismissal, it is, by analogy, a prerequisite to any default judgment." *Gunton Corp. v. Architectural Concepts*, 8th Dist. Cuyahoga No. 89725, 2008-Ohio-693, ¶ 7, citing *LaRiche v. Delisio,* 8th Dist. Cuyahoga No. 77352, 2000 WL 1754023 (Nov. 30, 2000). *Accord Huntington Natl. Bank v. Zeune*, 10th Dist. Franklin No. 08AP-1020, 2009-Ohio-3482, which noted that " '[t]he granting of default judgment is an equally harsh remedy [as dismissal] and requires the same due process guarantee of

"arguably," Civ.R. 55(A) requires "some sort of notice before a judgment of default is entered against" * * * "a defendant against whom a default judgment is sought as a discovery sanction." *Id.* at ¶ 22. However, we concluded that we did not need to decide the issue because the trial court's order provided the defendant with notice of its intent to enter default as a discovery sanction. *Id.* at ¶ 23.[6] In *Associated Business Inv. Corp. v. CTI Communications Inc.*, 2d Dist. Montgomery No. 19211, 2002-Ohio-6385, we also held that "implied notice" satisfied due process, where the trial court's order required the defendants to produce requested discovery and stated only that " '[f]ailure to comply in good faith with any provision of this Order may result in the award of further sanctions as provided for in Civil Rule 37(B).' " *Id.* at ¶ 6 and 23.

{¶ 35} In view of our prior authority, we conclude that the notice of potential default

---

prior notice as dismissal.' " *Id.* at ¶ 23, while discussing *Ohio Furniture*, 22 Ohio St.3d at 101, 488 N.E.2d 881, and *Hillabrand*, 87 Ohio St.3d at 518, 721 N.E.2d 1029. (Other citations omitted.) *See also Dayton Modulars, Inc. v. Dayton View Community Dev. Corp.*, 2d Dist. Montgomery No. 20894, 2005-Ohio-6257, ¶ 9 (observing that " '[t]he granting of a default judgment requires the due process guarantee of prior notice,' including those entered for failure to comply with discovery orders.") (Citation omitted.) However, we do not need to resolve any potential conflict between our comments in *Baker* and *Dayton Modulars*. Even if Kistner had proper notice of the possibility of default, that would not preclude a finding that the trial court failed to provide him with a reasonable opportunity to defend the motion for sanctions.

[6] We note that other courts have held that when default judgment is rendered as a Civ.R. 37(D) sanction, the trial court must give a party a seven day notice of hearing on the motion for default judgment, required by Civ.R. 55(A), prior to entering judgment. *See, e.g.*, *Cunningham v. Garruto*, 101 Ohio App.3d 656, 660, 656 N.E.2d 392 (3d Dist.1995); *Amtrust N. Am., Inc. v. Novus Credit Sols., Inc.*, 8th Dist. Cuyahoga No. 97499, 2012-Ohio-4272, ¶ 15-19; *Gray v. Newman*, 8th Dist. Cuyahoga No. 89549, 2008-Ohio-1076, ¶ 15 (seven days' notice of hearing on motion for default judgment is required). Again, we need not resolve any potential conflict. Under any standard, Kistner had appropriate prior notice that dismissal was a potential sanction. Furthermore, *Baker* did not rely on whether or not the notice requirements in Civ.R. 55(A) applied; the default judgment was reversed because the trial court abused its discretion by failing to conduct a sufficient inquiry on the merits. *Baker*, 2d Dist. Clark No. 2002-CA-17, 2003-Ohio-1030, at ¶ 27.

was sufficient to comply with due process. Our notice was less definite than the notice in *Baker*, where the court definitively said it would grant a default judgment if the defendant failed to appear for his deposition. *Baker* at ¶ 4. In contrast, the notice here stated that sanctions would be imposed, but only listed several possible sanctions, some of which were less severe than a default. However, the notice approved in *Associated Business* was even less specific.

{¶ 36} Although the court's notice of potential sanctions was sufficient to alert Kistner of the possibility of default or dismissal, a separate issue exists concerning whether Kistner had a reasonable opportunity to respond to the motion for sanctions. In *Bank One, NA v. Wesley*, 2d Dist. Montgomery No. 20259, 2004-Ohio-6051, a trial court granted a default judgment against the defendants and dismissed their counterclaim without allowing them the 14-day period that former Montgomery County Common Pleas Court Loc.R. 2.05(II)(B)(2) allotted for responding to a motion for sanctions. *Id.* at ¶ 1. We held that this was prejudicial error. *Id.* at ¶ 13-21. In particular, we relied on the *Hillabrand* decision. *Id.* at ¶ 1, 16-17, and 21, citing *Hillabrand*, 87 Ohio St.3d 517, 721 N.E.2d 1029. To the same effect is *Chrysler Credit Corp. v. Tackett*, 2d Dist. Clark No. 2881, 1992 WL 180139, *4 (July 20, 1992) (reversing a default judgment imposed under Civ.R. 37(D), where the trial court violated its own rules by issuing a ruling without giving the opposing party time to respond to a motion for sanctions).

{¶ 37} The current rule, Loc.R.2.05(B)(2)(b) of the Court of Common Pleas of Montgomery County, General Division, provides that all memoranda opposing a motion shall "be filed and served within 14 days from the date on which the motion was served. If no memorandum is filed within this time limit, the motion may be decided forthwith." In

this case, PNC's motion for sanctions and judgment was filed on October 5, 2015, and the court's decision was filed only three days later, on October 8, 2015.

**{¶ 38}** By failing to give Kistner time to respond before granting the motion for sanctions and request for default judgment, the trial court violated its own rules. Furthermore, the court's decision referred to events that allegedly occurred during a hearing at which the court was not present; instead, a magistrate conducted the hearing. The magistrate did not issue a decision, and no transcript of the hearing was filed. As a result, the court could not possibly have known exactly what transpired at the hearing, other than that a continuance was discussed. The court appears to have relied on mainly unverified statements of counsel, which Kistner was not given a chance to rebut. These actions prejudiced Kistner.

**{¶ 39}** As we noted in *Wesley*, "[t]he determination of what sanction to impose upon a party as a result of its failure to comply with discovery is confided to the sound discretion of the trial court. Due process requires that both parties have an opportunity to present arguments addressed to the trial court's exercise of this discretion before it makes a decision. By making the decision to impose the extreme sanction of default judgment before the time had run out under the trial court's own local rule, the trial court deprived the [defendants] of their opportunity to attempt to persuade the trial court that a lesser sanction was warranted in this case." *Wesley* at ¶ 21.

**{¶ 40}** Accordingly, the First Assignment of Error is sustained.

### III.   Did the Trial Court Err in Assessing Damages Against Kistner?

**{¶ 41}** Kistner's Second Assignment of Error states that:

The Trial Court Erred in Assessing Damages Against Kistner.

{¶ 42} Under this assignment of error, Kistner argues that the trial court erred in awarding damages to PNC because PNC's cross-claim against him was only for contribution and/or indemnification. In addition, Kistner contends that the trial court erred in awarding damages because the court was required to hold a hearing on damages. PNC argues, in response, that even if the trial court erred, any error was harmless because the judgment PNC obtained simply imposes an obligation that already exists due to the judgment that Farmer obtained. Specifically, the damages award to Farmer of $193,986.38 is the same amount that was later awarded to PNC. In addition, PNC argues that Kistner has already admitted fraud.

{¶ 43} Because this case is being reversed and remanded, this assignment of error is moot. On remand, the trial court may or may not decide to impose judgment for the alleged violation of the sanctions. Nonetheless, a few observations are in order.

{¶ 44} As a preliminary matter, PNC failed to submit any documentation to the trial court to support the judgment that was entered. Specifically, PNC's motion for sanctions did not include any factual materials or affidavits. Farmer's previously filed motion for sanctions did include a transcript of Kistner's deposition, a copy of a settlement statement, and a dated copy of a $70,683.61 check made out to Kistner from Partners Land Title Company. The check was dated December 31, 2012.[7]

{¶ 45} In his deposition, Kistner admitted that he originally had a mortgage with

---

[7] This evidence might have been appropriate as no objection was entered by Kistner. However, the trial court also granted Farmer's motion for sanctions without allowing Kistner the response time required by Loc.R. 2.05(B)(2)(b) of the Court of Common Pleas of Montgomery County, General Division. In addition, none of this evidence pertained to PNC's claim, as PNC's mortgage was released at the time of the closing.

National City Mortgage, a division of National City Bank of Indiana (not PNC), in the amount of $119,700, that was recorded on June 14, 2005. He admitted preparing a release of this mortgage, and further admitted that he had not paid off the mortgage when he asked Whitaker to sign the mortgage release as nominee for Watermark. No testimony was elicited as to the amount of the mortgage when it was released. Kistner also testified that he asked Whitaker to record the release, and that Whitaker had delivered the recorded original back to him. These were the sole facts before the trial court when it granted judgment.

{¶ 46} Typically, once a default judgment has been granted, a trial court will schedule a hearing on damages. *See, e.g.*, *Dayton Modulars*, 2d Dist. Montgomery No. 20894, 2005-Ohio-6257, at ¶ 1 (trial court granted default judgment for discovery violation and scheduled damages hearing); *Goodpaster v. Banker*, 1st Dist. Hamilton No. C-150031, 2016-Ohio-1077, ¶ 16 (stating that "even though a party is in default, the plaintiff must still prove his damages and the trial court must ascertain what damages are appropriate").

{¶ 47} In *Goodpaster*, the court of appeals concluded that a default judgment had been properly awarded against the defendant for noncompliance with discovery. *Id*. at ¶ 15. However, the court reversed the damages that had been awarded against the defendant and found that the trial court had not engaged in a sound reasoning process. *Id*. at ¶ 17-18. In particular, the court of appeals commented that:

> While the trial court has discretion in determining the measure of the
>
> damages, and the method of proof of those damages, that discretion is not
>
> unlimited. Even if a defendant is in default, he has a right to appear at the

damages hearing, to object to the introduction of evidence that is improper, and to participate in the hearing to minimize the damages. The denial of this right is error.

*Goodpaster* at ¶ 17.

**{¶ 48}** In situations involving liquidated damages, an evidentiary hearing on damages may not be required. *Hull v. Clem D's Auto Sales*, 2d Dist. Darke No. 2011-CA-6, 2012-Ohio-629, ¶ 7. " 'However, when the judgment is not liquidated, or only partially liquidated, it is reversible error for the trial court to enter a default judgment without holding a hearing on the damages issue.' " *Id.*, quoting *Mid-American Acceptance Co. v. Reedy*, 11th Dist. Lake No. 89-L-140072, 1990 WL 94816, *2 (June 29, 1990). (Other citations omitted.). Where no documented factual materials have been presented to the trial court, there is no way to ascertain if the damages awarded were liquidated, partially liquidated, or appropriate.

**{¶ 49}** We also express some confusion about the state of the claims in this case. As was noted above, PNC was named in this action as a stakeholder, and the complaint does not contain any specific claims against PNC. Count One of the Complaint asks for a declaration of Farmer's rights under the deed and a determination of her rights as a bona fide purchaser for value of the property. The remaining claims in the complaint (breach of warranty, fraud, and revocation of notary commission and damages) do not contain any allegations about PNC, and the prayer for relief asks for damages only against Kistner, Whitaker, and Kline, not against PNC.

**{¶ 50}** PNC did not assert a counterclaim against Farmer. In response to paragraphs 21, 22, and 23 of the complaint, which discuss Farmer's request for a

declaration of her rights under the deed and a determination of her rights as a bona fide purchaser for value, PNC stated that these allegations called for legal conclusions. PNC also denied that any declaration of rights, or determination that Farmer was a bona fide purchaser, would release or negatively affect PNC's mortgage on the property.

{¶ 51} PNC's cross-claim against Kistner, Kline, and Whitaker states that "[t]o the extent any liability is found against PNC, or to the extent any determination of rights negatively affects PNC's Mortgage or interest in the Property, which PNC expressly denies, such outcome was exclusively, solely, and proximately caused by the conduct of co-defendants Kistner, Whitaker, and Kline." Docket Summary, Case No. 26911, Doc. # 15, p. 9. PNC, therefore, asked for contribution or indemnity from these defendants to the extent PNC would be found liable or if any determination of rights negatively affected PNC's mortgage or interest in the property. *Id.*

{¶ 52} The October 13, 2015 judgment that Farmer received is now final, based on Kistner's failure to timely appeal, as well as PNC's failure to appeal. In the judgment entry filed on October 13, 2015, the trial court declared that the August 2012 release was fraudulent as to Farmer, that Farmer was the bona fide purchaser for value of the Olson Drive property, and that Farmer had been damaged in the amount due to PNC on the subject mortgage. The court, therefore, entered judgment in favor of Farmer in the amount of $193,896.38.

{¶ 53} "The purpose of recording mortgages and other encumbrances on property is to give notice to bona fide purchasers of the mortgage holder's lien." (Citations omitted.) *Acacia on the Green Condo. Assn., Inc. v. Jefferson*, 2016-Ohio-386, 47 N.E.3d 207, ¶ 25 (8th Dist.). The law is well-established that "a bona fide purchaser for value is bound

by an encumbrance upon land only if he has constructive or actual knowledge of the encumbrance." *Tiller v. Hinton*, 19 Ohio St.3d 66, 68, 482 N.E.2d 946 (1985), citing R.C. 5301.25. Because PNC did not appeal the finding that Farmer was a bona fide purchaser, Farmer may not be bound by PNC's mortgage.

**{¶ 54}** The judgment entry rendered in PNC's favor stated that the release filed by Kistner was fraudulent and void. In addition, the entry stated that PNC's mortgage was the first and best lien on the premises, and gave PNC judgment against Kistner in the amount of $193,896.38. However, "a purchaser of real estate who acquires the legal title in good faith for a valuable consideration without notice of an existing equity takes the property free from such equity." *Shaker Corlett Land Co. v. Cleveland*, 139 Ohio St. 536, 41 N.E.2d 243 (1942), paragraph three of the syllabus. *Accord Mollohan v. Court Dev., Inc.*, 9th Dist. Lorain No. 03CA008361, 2004-Ohio-2118, ¶ 19, *abrogated on other grounds*, *Internatl. Bd. of Electrical Workers, Local Union No. 8 v. Vaughn Industries, L.L.C.*, 116 Ohio St.3d 335, 2007-Ohio-6439, 879 N.E.2d 187; *Montgomery Cty. Treasurer v. Gray*, 2d Dist. Montgomery No. 20254, 2004-Ohio-2729, ¶ 13. As a result, the trial court's judgment that PNC's mortgage is the first and best lien on the premises is inconsistent with the fact that Farmer was a bona fide purchaser of the property.[8]

**{¶ 55}** Even though PNC's mortgage may not have been valid as to the premises,

---

[8] From this perspective, the money judgment awarded to Farmer appears to be inconsistent with the finding that Farmer was a bona-fide purchaser of the property. As was noted, "a purchaser of real estate who acquires the legal title in good faith for a valuable consideration without notice of an existing equity takes the property free from such equity." *Shaker Corlett Land Co. v. Cleveland*, 139 Ohio St. 536, 41 N.E.2d 243, at paragraph three of the syllabus. If Farmer took the property free from PNC's equity, Farmer would not appear to have been damaged in the amount due PNC on the mortgage. However, PNC did not appeal the trial court's decision in favor of Farmer.

that does not mean that PNC could not still recover on the mortgage or a promissory note. "In Ohio, the 'failure or success of recording an instrument has no effect on its validity as between the parties to that instrument.' " *Acacia*, 2016-Ohio-386, 47 N.E.3d 207, at ¶ 21, quoting *Bank of New York Mellon Trust Co, N.A. v. Loudermilk*, 5th Dist. Fairfield No. 2012-CA-30, 2013-Ohio-2296, ¶ 29.

**{¶ 56}** "[U]pon a mortgagor's default, the mortgagee may elect among separate and independent remedies to collect the debt secured by a mortgage." (Citations omitted.) *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, 60 N.E.3d 1243, ¶ 21. "First, the mortgagee may seek a personal judgment against the mortgagor to recover the amount due on the promissory note, without resort to the mortgaged property." (Citations omitted.) *Id.* at ¶ 22. This right to enforce a promissory note includes "the holder, a nonholder in possession with the rights of a holder, or a person entitled to enforce a lost or dishonored instrument as provided by statute." *Id.*, citing R.C. 1303.31.

**{¶ 57}** A second remedy is to bring an action to enforce the mortgage and take possession of the property, and the third remedy is for the mortgagee to "bring a foreclosure action to cut off the mortgagor's right of redemption, determine the existence and extent of the mortgage lien, and have the mortgaged property sold for its satisfaction." (Citations omitted.) *Id.* at ¶ 23-24. These are " 'separate and distinct remedies' " * * * and " 'the bar of the note or other instrument secured by mortgage does not necessarily bar an action on the mortgage.' " (Citations omitted). *Id.* at ¶ 25. For example, in *Holden*, the Supreme Court of Ohio concluded that a bank could proceed in foreclosure against the debtor's property, even though the debtor's personal liability for the note had

been discharged in bankruptcy. *Id.* at ¶ 26-28. The converse would also be true, i.e., even if an action against the premises is precluded, a bank could still proceed against the debtor on the note and mortgage. Whether this was done in the trial court is questionable.

{¶ 58} As was noted, PNC filed a cross-claim against Kistner for contribution and/or indemnification. "[A] contribution action concerns the obligation to pay a proportionate share of a joint obligation owed to an injured party." (Citation omitted.) *Ohio Cas. Ins. Co. v. Allied Tech. Servs., Inc.*, 9th Dist. Lorain No. 13CA010376, 2014-Ohio-748, ¶ 10. There was no indication in the trial court that PNC was liable for any proportion of any obligation owed to Farmer.

{¶ 59} In contrast, "[t]he rule of indemnity provides that 'where a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable.' " *Satterfield v. St. Elizabeth Health Ctr.*, 159 Ohio App.3d 616, 2005-Ohio-710, 824 N.E.2d 1047, ¶ 11 (7th Dist.), quoting *Travelers Indem. Co. v. Trowbridge*, 41 Ohio St.2d 11, 14, 321 N.E.2d 787 (1975).[9]

---

[9] *Travelers* was overruled on other grounds in *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 73 Ohio St.3d 391, 653 N.E.2d 235 (1995), paragraph one of the syllabus. In *Motorists*, the court noted that there was no right to contribution among tortfeasors when *Travelers* was decided. As a result, *Travelers* constructed an equitable stopgap to allow recovery in a situation that, in essence, involved concurrent tortfeasors and an indivisible injury, rather than an indemnity situation. *Id.* at 394-395. *Motorists* held that the correct statement of the law in this context would be that "[w]hen a medical provider's negligent treatment of bodily injuries caused by a tortfeasor results in further injury or aggravation of the original injury, R.C. 2307.31 creates a right of contribution between the tortfeasor and the medical provider as to indivisible injuries." *Id.* at 395.

{¶ 60} "Indemnity shifts the entire loss from one who has been compelled to make payment to the plaintiff to another who is deemed responsible for reimbursing the full amount. The right to indemnity exists when the relationship between the parties requires one to bear the loss for the other. This right may arise from common law, contract, or in some cases, statutes." (Citation omitted.) *Blair v. Mann*, 4th Dist. Lawrence No. 98CA35, 1999 WL 228265, *1 (Apr. 8, 1999).

{¶ 61} PNC was not found liable, either secondarily or jointly, and did not pay any damages to Farmer, and the basis for the judgment of damages is unclear. However, since the record is incomplete, we express no opinion on what damages might be awarded in the event of a default judgment. This is a matter to be decided by the trial court in the first instance, assuming that PNC's request for a default judgment on its cross-claim is granted on remand.

{¶ 62} Based on the preceding discussion, the Second Assignment of Error is overruled, as moot.

IV. Did the Trial Court Err in Dismissing Kistner's Cross-Claims?

{¶ 63} Kistner's Third Assignment of Error states that:

The Trial Court Erred in Dismissing Kistner's Cross-Claims.

{¶ 64} Under this assignment of error, Kistner contends that the trial court erred in dismissing his cross-claims against PNC, because PNC never sought discovery from him. Kistner also argues that the trial court never gave him notice of its intent to dismiss his cross-claims under Civ.R. 41(B)(1) for failure to provide discovery. PNC has not responded directly to these arguments. Instead, PNC argues, as it did in connection with

the Second Assignment of Error, that the judgment merely imposes an obligation that Kistner already owes to Farmer, and that the outcome would have been the same regardless of the route taken, because Kistner had admitted to fraud during his deposition.

{¶ 65} It is true that the decision ordering Kistner to appear for deposition and outlining the consequences if he failed to appear did not specifically mention dismissal of Kistner's cross-claims. Instead, the decision mentioned sanctions that mainly pertained to the plaintiff's action, such as refusing to allow Kistner to oppose the plaintiff's claims or support his defenses to those claims. Docket Summary, Case No. 26911, Doc. # 80, pp. 13-14. However, just like Farmer, PNC was pursuing discovery. Specifically, the transcript filed with the trial court indicates that PNC appeared at Kistner's original deposition on August 6, 2015. However, before PNC had a chance to ask any questions, Kistner terminated the deposition. Docket Summary, Case No. 26911, Doc. # 87, Ex. A, pp. 3 and 42-43. At that time, PNC reserved its right to seek sanctions. *Id.* at p. 43.

{¶ 66} PNC did not file a motion to compel after the deposition, perhaps concluding a separate motion would be unnecessary, since Farmer filed a motion asking the court to compel Kistner to appear for deposition. The trial court then issued its order to compel, and warned Kistner of potential sanctions. Although the court did not specifically mention dismissal of Kistner's cross-claims against PNC, the court's notice of potential sanctions was sufficient under *Baker*, 2d Dist. Clark No. 2002-CA-17, 2003-Ohio-1030, and *Associated Business*, 2d Dist. Montgomery No. 19211, 2002-Ohio-6385. The trial court informed Kistner that if he failed to comply with the order compelling discovery that he would be subject to sanctions under Civ.R. 37(B), including, but not limited to, the

sanctions described in the order. Dismissal of Kistner's cross-claims against PNC was a potential sanction under Civ.R. 37(B)(1)(e), and Kistner had appropriate notice.

{¶ 67} After Kistner failed to comply with the discovery order, PNC filed its own motion for sanctions, and joined in Farmer's previously-filed motion for sanctions. As was noted, the trial court did not err in failing to give Kistner notice of the potential sanctions; it erred by violating a court rule and by failing to give Kistner a reasonable opportunity to be heard with respect to the motion for sanctions. *See Hillabrand*, 87 Ohio St.3d at 518, 721 N.E.2d 1029 (noting that under Civ.R. 41(B)(1), "dismissal with prejudice is proper only when 'counsel has been informed that dismissal is a possibility and *has had a reasonable opportunity to defend against dismissal* '"). (Emphasis sic.)

{¶ 68} Furthermore, we disagree with PNC's assertion that the judgment should be affirmed either because Farmer obtained a judgment, or because the same outcome would have resulted anyway. PNC and Farmer are not the same party, and there is no indication that PNC was assigned Farmer's rights. Their interests were also opposed with respect to the issue of whether Farmer was a bona fide purchaser of the property.

{¶ 69} In addition, rules of procedure, court rules, and restriction of appellate review exist for good reasons, including the need to provide all litigants with due process and a chance to fully litigate claims. For this reason, when we review the record, we are confined to matters raised in the trial court. *See, e.g., Wallace v. Mantych Metalworking*, 189 Ohio App.3d 25, 2010-Ohio-3765, 937 N.E.2d 177, ¶ 10 (2d Dist.); *Ratchford v. Proprietors' Ins. Co.*, 47 Ohio St.3d 1, 4, 546 N.E.2d 1299 (1989). Notably, PNC did not file a motion for summary judgment in the trial court. In fact, PNC did not even file factual materials in support of the damages judgment. Accordingly, we see no merit in PNC's

argument.

**{¶ 70}** In light of the preceding discussion, the Third Assignment of Error is sustained.

## V.  Conclusion

**{¶ 71}** The First and Third Assignments of Error having been sustained, and the Second Assignment of Error having been overruled as moot, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

. . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Andrew M. Engel
Thomas W. Kendo, Jr.
H. Toby Schisler
Amelia Bower
Christopher Sove
Michael Burdge
Hon. Mary Lynn Wiseman