JOURNAL ENTRY AND OPINION
{¶ 1} Appellants Robert Holliday ("Robert") and Annette Holliday appeal from the judgment of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of appellees Ford Motor Company ("Ford"), TRW Inc. ("TRW"),[1] TRW Vehicle Safety Systems Inc. ("TRW VSSI"), TRW Automotive Safety Systems Inc. ("TRW Automotive"), and TRW Systems Services Co. ("TRW Systems"), collectively "the TRW appellees." For the reasons stated below, we affirm in part, reverse in part, and remand the matter to the trial court for further proceedings.
 {¶ 2} The following facts give rise to this appeal. Robert and Annette Holliday, individually and on behalf of their three minor children, brought this action against Ford and the TRW appellees as a result of injuries sustained by Robert in a motor vehicle accident on November 29, 1999, in the United Arab Emirates ("UAE").
 {¶ 3} The Hollidays are citizens of England. At the time of the accident, Robert was a pilot who had taken a position with Emirates Airways in Dubai and had moved his family to the UAE.
 {¶ 4} When the accident occurred, Robert was driving a 1996 Ford Explorer that he owned on a four-lane road in Dubai. Robert has no recollection of the accident. The person who was in the car behind Robert, Victoria Hamilton, testified in deposition that Robert was traveling at or near the posted speed limit.
 {¶ 5} An accident reconstructionist, Robert Anderson, concluded the following:
 {¶ 6} "Mr. Holliday was driving his 1996 Ford Explorer, slightly over 50 mph, on a straight flat dry roadway. The left rear tire experienced a tread separation type of failure. The tire failure pulled the vehicle to the left. The correction with an over steering vehicle caused the vehicle to go to the right side of the roadway, where it overturned one and one-half times at a speed of just over 30 mph. * * *"
 {¶ 7} Robert Holliday was found outside the vehicle. The Hollidays allege that at the time of the accident, Robert was wearing all available occupant restraint systems, but when the vehicle rolled over, "the roof collapsed catastrophically" and the seat belt system failed to restrain Robert.
 {¶ 8} Robert was taken to a hospital in Dubai and was eventually flown to a hospital in England. He sustained spinal cord and head injuries, and was rendered a paraplegic.
 {¶ 9} The Hollidays allege in their complaint that Ford is the manufacturer of the vehicle and that the TRW appellees are manufacturers of the vehicle's occupant restraint system. The Hollidays further allege that the vehicle and occupant restraint systems were defective in manufacture and in design, by failure to provide adequate warning or instruction and by failure to conform to an express representation made with respect to their character, quality or safety. It is also alleged that the vehicle had a lack of crashworthiness, an inadequate occupant restraint system, and a propensity to roll over during foreseeable maneuvers.
 {¶ 10} Ford and the TRW appellees all filed motions to dismiss, raising issues of personal jurisdiction and forum non conveniens. The trial court denied these motions. These parties also filed a joint renewed motion to dismiss that was denied by the court.
 {¶ 11} Thereafter, the TRW appellees and Ford both filed motions for summary judgment. The TRW appellees asserted that three of the four TRW appellees had no involvement with the design or manufacture of any component of the vehicle, including the seat belt. The only TRW appellant involved was TRW VSSI. TRW VSSI claimed the seat belt it manufactured was without defect and in compliance with Ford's specifications. TRW VSSI also claimed that as a component part manufacturer, it was not responsible for the overall crashworthiness of the vehicle. TRW VSSI also asserted a spoliation defense, claiming the vehicle had been torn apart in a salvage operation following the accident and before TRW VSSI had an opportunity to inspect the vehicle. Ford asserted a similar spoliation defense. Ford also claimed that Michigan law applied to the Hollidays' claims and that under Michigan law the punitive damages claim was precluded. The trial court substantially agreed with these arguments and granted the motions for summary judgment.
 {¶ 12} The Hollidays are appealing the trial court's rulings and have raised two assignments of error for our review. Their first assignment of error provides:
 {¶ 13} "The trial judge erred, as a matter of law, in granting summary judgment in favor of defendant-appellee, Ford Motor Company, on the grounds that no factual disputes existed upon the spoliation defense that had been asserted."
 {¶ 14} As an initial matter, the Hollidays raise a choice of law issue. A trial court's choice of law determination is subject to a de novo standard of review. Hoyt v. Nationwide Mut. Ins.Co., Franklin App. No. 04AP-941, 2005-Ohio-6367; Whyte v.Canada S.S. Lines (July 24, 1997), Cuyahoga App. No. 71414.
 {¶ 15} In determining which law should be applied, we look to the analysis set out by the Supreme Court of Ohio in Morgan v.Biro Mfg. Co. (1984), 15 Ohio St.3d 339, 341-42. In Morgan,
the Supreme Court of Ohio adopted the Restatement of the Law of Conflicts theory for determining the choice of law in a particular case. The court stated that "a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit."Morgan, 15 Ohio St.3d at 342. To determine which state has the more significant relationship, a court should consider factors including "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; [and] (4) the place where the relationship between the parties, if any, is located * * *." Id.
 {¶ 16} Here, the parties do not dispute the trial court's determination that Michigan has a more substantial interest in this matter than the place of the accident (the UAE). Moreover, the parties do not dispute that Michigan law should be applied to the products liability claim. In this case, the trial court observed that the injury occurred in the UAE and the Hollidays are British citizens who purchased the vehicle in the UAE. However, Ford is a Delaware corporation with a principal place of business in Michigan; Michigan is the state in which the 1996 Ford Explorer was designed and was among the states in which the handling and suspension system was tested. Upon our review, we find that Michigan law should be applied to the claims against Ford because Michigan has a more significant relationship to the lawsuit than the UAE.
 {¶ 17} The parties likewise do not dispute that under Michigan law the Hollidays cannot recover on their punitive damages claim. Accordingly, we affirm the trial court's dismissal of the punitive damages claim.
 {¶ 18} The primary issue for our review involves the spoliation defense. The Hollidays contend that Ohio law should have been applied to the spoliation defense because it relates to an evidentiary or litigation matter and has nothing to do with the state of Michigan. Ford argues that regardless of whether Michigan or Ohio law is applied to the spoliation defense, a dismissal of the action is still the appropriate result.
 {¶ 19} We have previously recognized that "before engaging in any choice of law analysis, a court must first determine whether any conflict exists. If the competing states would use the same rule of law or would otherwise reach the same result, it is unnecessary for a court to make a choice of law determination because there is no conflict." Glidden Co. v. Lumbermens Mut.Cas. Co., Cuyahoga App. No. 81782, 2004-Ohio-6922, citingMcDonald v. Williamson, Cuyahoga App. No. 81590,2003-Ohio-6606.
 {¶ 20} After reviewing Ohio and Michigan law pertaining to a plaintiff's destruction or spoliation of evidence or the failure to preserve evidence in a civil action, we find that there is no conflict between the laws of the two states.[2]
 {¶ 21} In Ohio, where evidence is intentionally or negligently spoiled or destroyed by a plaintiff or his expert before the defense has an opportunity to examine that evidence for alleged defects, a court may impose a sanction. See HamiltonMutual Ins. Co. of Cincinnati v. Ford Motor Co. (1997),122 Ohio App.3d 611, 613; Cincinnati Ins. Co. v. General Motors Corp.
(Oct. 28, 1994), Ottawa App. No. 94OT017 (both cases indicated that the court may preclude any and all expert testimony as a sanction). The degree of prejudice suffered by the defendant is the major consideration for determining the sanction. CincinnatiIns. Co. v. General Motors Corp., supra. Thus, a trial court must determine the degree of prejudice to the defendant and impose a sanction commensurate with that degree of prejudice. Id. Further, "Ohio courts have followed the policy of imposing the least severe sanction, or at least a sanction short of outright dismissal of the action with prejudice, unless the plaintiff's conduct evidences bad faith." Transamerica Ins. Group v. Maytag
(1994), 99 Ohio App.3d 203, 206 (finding the trial court went too far in ordering an outright dismissal of a case for a failure to preserve evidence); see, also, American States Ins. Co. v.Tokai-Seiki (H.K.), Ltd. (1997), 94 Ohio Misc.2d 172, 178 (court overruled dismissal recognizing that in fashioning a remedy that is fair and equitable, the court should place both parties on a level playing field).
 {¶ 22} Likewise, this court has recognized that "destruction of evidence does not generally warrant the extreme sanction of dismissal of a plaintiff's claim. Other remedies, such as the exclusion of expert testimony based on evidence not available to the defendant, are usually more appropriate. Moreover, although there is a rebuttable presumption that a defendant was prejudiced by the destruction of relevant evidence, a plaintiff can still persuade the court that there was no reasonable possibility that the defendant was prejudiced." State Auto Ins. Cos. v. Troll,
Cuyahoga App. No. 84284, 2005-Ohio-877.
 {¶ 23} Similarly, Michigan courts have recognized their inherent power to sanction parties for the loss or destruction of evidence. See Brenner v. Kolk (1997), 226 Mich.App. 149,159-161. Like Ohio, Michigan applies an abuse of discretion standard and requires a court to carefully fashion a sanction that "denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence." Id. at 161. Michigan has also found the dismissal of an action is improper where the record does not demonstrate egregious conduct that warrants such an extreme measure. Id. As stated in Brenner, "Dismissal is a drastic step that should be taken cautiously. Before imposing such a sanction, the trial court is required to carefully evaluate all available options on the record and conclude that the sanction of dismissal is just and proper. Before dismissing the case, the trial court should have considered lesser sanctions, including the exclusion of evidence that is unfairly prejudicial to defendants because of plaintiff's failure to preserve the [evidence]." Id. (internal citation omitted); see, also, Myers v. Kevin Hilgendorf and VIPPlumbing, Inc. (Nov. 22, 2005), Mich.App. No. 254879, 2005 Mich.App. Lexis 2895.
 {¶ 24} Having found no conflict between Ohio and Michigan law, we shall proceed to address the trial court's decision to grant Ford's motion for summary judgment.
 {¶ 25} In granting summary judgment to Ford, the trial court essentially imposed the sanction of a dismissal. The court determined that the Hollidays "failed to sustain their duty to preserve the vehicle post-accident, and there is no remedy sufficient to overcome the prejudice done to Defendant."
 {¶ 26} Although the Hollidays are technically appealing from a summary judgment ruling, our review requires a determination of whether the trial court abused its discretion in determining an appropriate sanction. See Transamerica Ins. Group v. Maytag
(1994), 99 Ohio App.3d 203, 205.
 {¶ 27} The allegations in this case involve a failure to preserve evidence. Following the accident, the vehicle was held by local police for approximately six months. Apparently, the Hollidays' insurer had the vehicle transferred to a local garage for several more months. Ultimately, the vehicle ended up at a junkyard.
 {¶ 28} There was some disassembly of the front end of the vehicle, as well as the steering wheel and dash panel area. The front doors had been removed, and pillars were cut near the windshield. However, the roof structure and safety belt system remained intact. One of the wheels and a tire had been sold. The three remaining tires were shipped to one of the plaintiffs' experts, who then shipped them to California, but only one tire arrived. Photographs of the vehicle were taken before there were any significant alterations of the vehicle.
 {¶ 29} Despite the alteration and loss of certain parts of the vehicle, the Hollidays point out that the vehicle had been altered before any expert conducted an inspection of the vehicle. The Hollidays' design engineer, Stephen R. Syson, offered his opinion that the alteration of the vehicle did not preclude an investigation of the accident. Indeed, experts for both parties were able to form opinions about the accident. One of Ford's experts, Dr. Mercaldi, was able to perform an accident reconstruction of the vehicle without the missing parts. Another one of Ford's experts, Dr. Dennis Schneider, was able to form an opinion that Robert Holliday was an unrestrained driver who suffered his spinal injury after being ejected from the vehicle. Dr. Schneider confirmed that there were "witness marks" left on the inside headliner of the roof that were available for inspection. Dr. Schneider also indicated that despite the fact that parts were missing, he was not prevented from conducting an analysis and reaching a conclusion to a reasonable degree of scientific certainty.
 {¶ 30} One of the Hollidays' experts, Carley C. Ward, Ph.D., a biomechanical engineer, inspected the safety and seat belt restraint system, including the RCF-67 buckle and latch, and concluded that it "inertially unlatched in the rollover sequence thereby allowing Mr. Robert Holliday to be ejected." The Hollidays also argue that with respect to the "tire separation," there was still evidence on the wheel well and back tail light, as well as photographs, from which experts could draw conclusions.
 {¶ 31} We acknowledge Ford's contentions that it was prejudiced by the Hollidays' failure to preserve the vehicle, which created an inability to inspect certain components of the vehicle. However, upon our review, we find the trial court's dismissal of this case for a failure to preserve evidence was not a fair and equitable sanction with respect to any prejudice sustained by Ford.
 {¶ 32} There is no evidence that the Hollidays deliberately destroyed evidence. Insofar as they failed to preserve evidence, experts for both sides were still able to form opinions to a reasonable degree of scientific certainty. From our review, it does not appear that the trial court considered the degree of prejudice to Ford or a sanction commensurate therewith. Also, in dismissing the action, the trial court did not consider any lesser remedies that would place both parties on a level playing field, such as the exclusion of certain expert testimony. For these reasons, we find that the trial court did abuse its discretion in dismissing the case against Ford.
 {¶ 33} We also find that, except for the punitive damages claim, Ford has failed to establish that there are no genuine issues as to any material fact pertaining to the claims against it. Although Ford requests in its brief that this court consider whether the trial court should have dismissed the claims in this action for lack of personal jurisdiction, no cross appeal was taken from the trial court's denial of Ford's motion to dismiss. The Rules of Appellate Procedure require a party to file a notice of cross appeal within a designated time period. App.R. 3(C)(1) and App.R. 4. Ford did not file a notice of cross appeal in this action. As a result, Ford's argument is not properly before us and we shall not review it. See, e.g., Dexxon Digital Storage,Inc. v. Haenszel, 161 Ohio App.3d 747, 751, 2005-Ohio-3187;Bennett v. Waidelich, Fulton App. No. F-04-023, 2005-Ohio-2489;Costa v. Woolfork (Dec. 1, 1994), Cuyahoga App. No. 66463 (cases recognizing review is not permitted where no notice of cross appeal is filed).
 {¶ 34} For the above reasons, the trial court's grant of summary judgment to Ford is reversed; however, the dismissal of the punitive damages claim is affirmed.
 {¶ 35} The Hollidays' second assignment of error provides:
 {¶ 36} "The trial judge erred, as a matter of law, by granting summary judgment in favor of defendant-appellees, TRW, Inc., et al., on the basis that the seatbelt system at issue was merely a `component part' which was not dangerous or defective in and of itself."
 {¶ 37} This court reviews a trial court's grant of summary judgment de novo. Ekstrom v. Cuyahoga County Comm. College,150 Ohio App.3d 169, 2002-Ohio-6228. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Dussell v. Lakewood Police Department,99 Ohio St.3d 299, 300-301, 2003-Ohio-3652, citing State ex rel.Duganitz v. Ohio Adult Parole Auth., 77 Ohio St.3d 190, 191, 1996-Ohio-326.
 {¶ 38} The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Zivich v.Mentor Soccer Club, 82 Ohio St.3d 367, 369-370. Once the moving party satisfies this burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings," but instead "must set forth specific facts showing that there is a genuine issue for trial." Courie v. ALCOA, Cuyahoga App. No. 85285, 2005-Ohio-3483; Civ.R. 56(E).
 {¶ 39} As an initial matter, we note that the Hollidays do not make any assertions in their argument regarding the trial court's grant of summary judgment to TRW Automotive or TRW Systems. The Hollidays also acknowledge that there is no dispute that TRW VSSI designed and manufactured the lap and shoulder belt system that Ford used in the 1996 Ford Explorer. Since no basis has been established for finding TRW Automotive or TRW Systems liable for the alleged defects in the seat belt system at issue, we find summary judgment was appropriately granted to these two parties. The issue becomes whether summary judgment was properly granted in favor of TRW VSSI and TRW, Inc.
 {¶ 40} We first consider the grant of summary judgment to TRW VSSI, as it is dispositive of the matter.[3] In a products liability or design defect case, the plaintiff bears the burden of proving three elements: (1) that there was a defect in the product, (2) that the defect existed at the time the product left the manufacturer's hands; and (3) that the defect was the direct cause of the plaintiff's injuries. State Farm Fire Cas. Co. v.Chrysler Corp. (1988), 37 Ohio St.3d 1, 5.
 {¶ 41} The Hollidays argue that the trial court erred in finding TRW VSSI could not be held liable as a manufacturer of a component part that was not "in and of itself" dangerous or defective. Pursuant to the "component parts doctrine," a manufacturer generally has no duty to warn of potential dangers that may cause harm on integration of its component part or product into an end product or entire system, where the component part is not "in and of itself" dangerous or defective and the manufacturer is not involved in the final product's design or assembly. See, e.g., Brennaman v. R.M.I. Co. (1994),70 Ohio St.3d 460, 1994-Ohio-322; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317; Searls v. Doe (1986), 29 Ohio App.3d 309,312; Roberts v. Performance Site Mgmt., Franklin App. No. 03AP-784, 2004-Ohio-2820; see, also, Scott v. Allen Bradley Co.
(Mich.App. 1984), 362 N.W.2d 734. The Hollidays claim that the seat belt system was prone to inertial unlatching and was "in and of itself" dangerous or defective.[4]
 {¶ 42} Upon our review of the record, we find the Hollidays have failed to set forth sufficient evidence to create a genuine issue of material fact as to whether the component part was in and of itself defective. In support of their argument that the seat belt system was prone to inertial unlatching, the Hollidays refer to their experts' opinions. Stephen Syson, a specialist in analyzing automotive design and performance including vehicle restraint systems, opined that TRW knew the buckle could separate in collisions and that the RCF-67 buckle had routinely failed in a series of sled tests. However, as the TRW appellees point out, Syson indicated in his deposition that he was unable to tell to a reasonable degree of engineering certainty whether or not the belt became inertially unlatched.
 {¶ 43} Carley C. Ward, Ph.D., a biomechanical engineer, stated in her affidavit that she had served as an expert witness concerning inertial unlatching of the RCF-67 buckles and latches and believed that the buckles were in and of themselves dangerous and defective. Ward also made the conclusory assertion that from her inspection of the Holliday vehicle, she was "of the opinion that it inertially unlatched in the rollover sequence thereby allowing Mr. Robert Holliday to be ejected." The problem with Ward's opinion is that it is a conclusory assertion with no supporting evidence. It is improper for an expert's affidavit to set forth conclusory statements or legal conclusions without sufficient supporting facts. Frederick v. Vinton County Bd. ofEduc., Vinton App. No. 03CA579, 2004-Ohio-550; Douglass v.Salem Community Hosp., 153 Ohio App.3d 350, 360-361,2003-Ohio-4006; Davis v. Schindler Elevator Corp. (1994),98 Ohio App.3d 18, 21; see, also, Evid.R. 704 and 705.
 {¶ 44} The Hollidays have presented no evidence as to how the seat belt inertially unlatched in this case or evincing that it actually occurred.[5] In the absence of evidence of an actual defect in the component part at issue, we find the trial court appropriately concluded that TRW VSSI was entitled to judgment as a matter of law as the manufacturer of the component part.
 {¶ 45} For the same reason, we find that TRW, Inc. cannot be held liable under any theory of agency or veil piercing. We also find that the Hollidays have alleged insufficient facts to support these theories, which we note were not raised in the amended complaint.
 {¶ 46} Accordingly, we find that the Hollidays failed to set forth a genuine issue of fact as to the liability of the TRW appellees and that the trial court properly granted summary judgment in their favor. The Hollidays' second assignment of error is overruled.
Conclusion
 {¶ 47} For the above reasons, we affirm the trial court's decision that granted summary judgment to the TRW appellees. We also affirm the decision to dismiss the punitive damages claim against Ford. In all other respects, we reverse the trial court's decision to grant summary judgment in favor of Ford. We remand the matter to the trial court to conduct further proceedings relating to the remaining parties and claims.
Affirmed in part, reversed in part and remanded.
This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellants and appellees share the costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Rocco, J., concur.
[1] The TRW appellees' brief indicates that TRW Automotive U.S. LLC is the assignee of TRW Inc. n/k/a Northrop Grumman Space 
Mission Systems Corp.
[2] We also note that under choice-of-law rules, the law of the forum controls as to all matters connected with procedure for its enforcement and remedial matters, as distinguished from substantive rights. See Guider v. LCI Communications HoldingsCo. (1993), 87 Ohio App.3d 412, 417. Regardless, we have found no conflict with respect to Ohio and Michigan law pertaining to the failure to preserve evidence.
[3] The TRW appellees assert that because the docketing statement did not assign the granting of summary judgment for TRW VSSI as error, the appeal is not appropriately before us. A review of the notice of appeal in this case indicates that the Hollidays were appealing from the trial court's entries of summary judgment in favor of Ford and the TRW appellees, and copies of those rulings were attached to the notice, which was mailed to counsel for the TRW appellees. We find that this notice was sufficient and that any error on the docketing statement was harmless.
[4] While the TRW appellees claim that the inertial unlatching theory is junk science, an expert for the Hollidays claimed that the theory is not junk science, but instead is based upon sound principles of mechanical and physical evidence. Indeed, other courts have found evidence of partial latching and inertial unlatching to be admissible. See Nemir v. Mitsubishi MotorsCorp. (6th Cir. 2004), 381 F.3d 540; Guild v. General MotorsCorp. (W.D. NY 1999), 53 F.Supp.2d 363. Insofar as the TRW appellees claim that the inertial unlatching theory has been tested and rejected by the National Highway Traffic Safety Administration (NHTSA) and has cited to a case that relied on this determination to find testimony to the contrary was unreliable, Dale v. General Motors Corp. (N.D. GA 1999),109 F.Supp.2d 1376, we find that the NHTSA's findings do not conclusively preclude the introduction of evidence to the contrary which may be assessed by the trier of fact in considering the weight of the evidence. See Guild, supra.
[5] One of Ford's experts, Dennis C. Schneider, a biomechanical engineer, testified that he believed Robert Holliday was unrestrained in the accident.