[Cite as *Stratacache, Inc. v. Wenzel*, 2019-Ohio-3523.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STRATACACHE, INC. | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28060 |
| | : | |
| v. | : | Trial Court Case No. 2015-CV-5966 |
| | : | |
| ALBERT A. WENZEL | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of August, 2019.

. . . . . . . . . . .

JONATHAN R. SECREST, Atty. Reg. No. 0075445, and SARA H. JODKA, Atty. Reg. No. 0076289, 150 East Gay Street, 24th Floor, Columbus, Ohio 43215
    Attorneys for Plaintiff-Appellee

THOMAS M. GREEN, Atty. Reg. No. 0016361, and JONATHAN F. HUNG, Atty. Reg. No. 0082434, 800 Performance Place, 109 North Main Street, Dayton, Ohio 45402
    Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Albert A. Wenzel appeals from the trial court's final judgment entry granting judgment by default in favor of Stratacache, Inc. and against Wenzel on counts two and three[1] of Stratacache's complaint; dismissing with prejudice Wenzel's counterclaims against Stratacache and third-party complaint against Christopher Riegel; and awarding Stratacache damages totaling $200,000. The judgment of the trial court will be affirmed.

### Factual and Procedural Background

{¶ 2} Stratacache, Inc. is a digital media company headquartered in Dayton, Ohio. For nearly 10 years, Wenzel worked as a salesman for Stratacache, where he was paid a salary plus commissions and reported to Riegel, Stratacache's chief executive officer. When Wenzel left Stratacache's employ[2] in September 2015, he held the position of Senior Vice President.

{¶ 3} On November 12, 2015, Stratacache filed a five-count complaint against Wenzel in the Montgomery County Court of Common Pleas, setting forth claims for: 1) breach of contract, 2) disgorgement of wages, 3) misappropriation of trade secrets, 4) tortious interference with contracts and business relationships, and 5) preliminary and permanent injunctive relief. According to Stratacache, while working for the company, Wenzel sought reimbursement for travel expenses that were not reasonably related to his

---

[1] Although the final judgment entry was unclear as to the exact disposition of count four of Stratacache's complaint (see Doc. #158, p. 1), any doubt regarding the finality of the judgment as to that particular count has been resolved by the parties' joint response to this court's show cause order regarding the issue of appellate jurisdiction. (See 7/16/19 Order to Show Cause and 7/30/19 Joint Response to the Order to Show Cause).
[2] Although Stratacache maintains and the trial court found that Wenzel was fired (see Doc. #157, p. 1), Wenzel suggests that he "resigned." (See Appellant's Brief, p. 3).

employment. After Wenzel's employment there ended, however, Stratacache learned that Wenzel, while still employed by Stratacache, had co-founded and performed services for a competing business called "Strata Insights, Inc." Stratacache's complaint alleged that Wenzel impermissibly competed against his former employer by soliciting Stratacache's customers and using and disclosing Stratacache's trade secrets and confidential information, and violated his duty of loyalty by engaging in outside employment while still employed by Stratacache.

{¶ 4} Wenzel responded with counterclaims against Stratacache and a third-party complaint against Riegel. Wenzel asserted claims for breach of contract and violation of R.C. 4113.15[3] against Stratacache, and claims for unjust enrichment, fraud, promissory estoppel, and punitive damages against both Stratacache and Riegel. Wenzel later amended his pleadings to add a claim of conversion against both other parties. Wenzel alleged that Stratacache and Riegel failed to pay Wenzel commissions and reimburse business expenses due from his time at Stratacache. With leave of court, Wenzel later filed second amended counterclaims as well as an amended third-party complaint, adding no new claims, but clarifying certain factual allegations.

{¶ 5} After the exchange of some discovery, the trial court granted partial summary judgment in Wenzel's favor as to Stratacache's breach of contract claim (Count One), based on Stratacache's failure to produce evidence that Wenzel had signed a non-compete agreement. (Doc. #61). All parties later submitted motions for summary judgment as to the remaining claims. (Docs. # 68, 69, 75).

---

[3] That statute regulates when employers doing business in Ohio shall pay their employees' wages.

{¶ 6} With the summary judgment motions pending, however, discovery disputes persisted as to certain aspects of the parties' claims. One particular point of contention was Stratacache's assertion that it sent Wenzel an email on May 11, 2012 that set his commission rate at one percent (1%), and Wenzel's denial that he ever received that email. Additionally, Stratacache sought information as to any communications between Wenzel and Stratacache customers about Wenzel's competing business while Wenzel remained in Stratacache's employ. For those reasons, on January 9, 2017, Stratacache served on Wenzel a second set of interrogatories and first request for production of documents, including a request that Wenzel produce an IBM ThinkPad computer in his possession. Earlier that day, Wenzel had submitted supplemental responses to Stratacache's first set of discovery requests, identifying an IBM ThinkPad laptop as the computer "he used during his employment at Stratacache."

{¶ 7} Wenzel failed to produce that computer or other requested discovery by the February 6, 2017 deadline specified in Stratacache's requests. As a result, on May 16, 2017, Stratacache moved to compel Wenzel to respond to its outstanding discovery requests. (Doc. #65). On June 8, 2017, the trial court granted in part that motion to compel, directing Wenzel "to submit * * * for a forensic search" the IBM ThinkPad computer believed to possibly contain emails relevant to the parties' claims. (Doc. # 79, p. 5).

{¶ 8} Pursuant to Civ.R. 56(F), Stratacache thereafter sought to delay its response to Wenzel's summary judgment motion until Wenzel produced additional discovery, including the computer; Wenzel opposed that motion. Following a telephone conference with the parties on July 12, 2017, the court issued an order clarifying the protocol for the

forensic examination and the subsequent handling of "any documents extracted" from Wenzel's computer. (Doc. #94). Thereafter, Wenzel submitted the computer for examination by Stratacache's designated expert.

{¶ 9} On August 14, 2017, Stratacache and Riegel jointly moved for dismissal of Wenzel's claims as well as default judgment on Stratacache's claims against Wenzel, "as sanctions for Wenzel's intentional destruction of evidence." (Doc. #104, p. 1). Specifically, Stratacache and Riegel contended that on February 13, 2017 – "*after* Stratacache requested [that Wenzel] produce the computer" – Wenzel "wiped [the] computer and deleted all information contained on it." (Emphasis sic.) (*Id.*, pp. 1-2). According to a report prepared by Stratacache's computer expert, his forensic examination of the IBM ThinkPad revealed that Wenzel reformatted the computer's hard drive and installed a Windows 10 Professional operating system on February 13, 2017, leaving no emails from the relevant time frame remaining on that computer. (*Id.*, Exh. C). The movants noted that Wenzel withheld that fact throughout Stratacache's efforts to obtain the computer. Maintaining that Wenzel's actions "destroyed relevant electronic evidence crucial to Stratacache's case against Wenzel and to Stratacache's defense of Wenzel's claims" (*id.*, p. 2), Stratacache and Riegel urged that judgment in their favor as to all claims between the parties was warranted.

{¶ 10} In opposing the motion for discovery sanctions against him,[4] Wenzel asserted for the first time that he had created a backup of his laptop's hard drive, which

---

[4] In the same filing, Wenzel included motions requesting that discovery sanctions be imposed against Stratacache and that all evidence about the disputed May 11, 2012 email regarding commissions be excluded. As the trial court's denial of those motions has not been appealed, we will not discuss those motions specifically.

he claimed "means that Stratacache still has the ability to review emails contained on the laptop" from the relevant time period. (Doc. #111, p. 13). Wenzel also denied that the laptop ever had contained any "relevant emails," offered a benign explanation for changes made to the laptop,[5] and asserted that any discovery delays were due to Stratacache's "unreasonable demand for unfettered access" to the computer's contents. (*Id.*, pp. 5-7). Additionally, Wenzel took issue with certain conclusions of Stratacache's expert about changes made to the ThinkPad's hard drive.

{¶ 11} On September 26, 2017, the trial court held a hearing on the parties' motions for sanctions and motion in limine,[6] during which Wenzel and computer experts for both parties testified. On October 3, 2017, the court issued its decision. (Doc. #121). The trial court concluded that Wenzel had violated the discovery rules by failing to disclose the existence of the backup drives in his discovery responses or in response to the court's orders that he produce the IBM ThinkPad computer. Further, the court found that "Wenzel intentionally destroyed the evidence contained on the computer [o]n February 13, 2017." (*Id.*, p. 12). As to that finding, the trial court elaborated:

> The Court does not find * * * credible [Wenzel's claim] that he was just one of the unlucky users whose data was lost upgrading the system to Windows 10. * * * The reformatting of the hard drive prior to the installation of the new operating system opened all previous information to the risk of

---

[5] According to Wenzel, in February 2017, he "approved an upgrade to Windows 10 [on the IBM ThinkPad], because the computer was running so slowly and inefficiently. Also, the laptop was getting non-stop notifications from Microsoft telling me I needed to upgrade to Windows 10." (Doc. #110, Exh. F, Affidavit of Albert A. Wenzel, ¶ 10).

[6] *See* n.4, above.

being overwritten. The installation of the new operating system overwrote all of the information, *removing any chance of recovering the information.* The timing of the installation of the new operating system is the most concerning part for this Court. The computer was required to be turned over only seven days prior to the installation of the operating system[,] despite [Windows 10 having] be[en] available for about a year and a half.

Further, the entire incident is suspect. This is not a matter of a person with little technological knowledge believing the prompt to upgrade [to] Windows 10[,] which stated that data would not be los[t]. Wenzel is tech savvy and has a better understanding of computers and their workings than the average user. This is further not the case where information was lost innocently and then immediately disclosed to attorneys and the Court. No, this is a case where Wenzel was aware that information was no longer contained on the computer yet continued to fight its production in discovery. The Court and counsel spent hours of their time negotiating the production of the computer, not including the time spent dealing with the many motions to compel on the matter. The Court assumes such tactics to delay turning over the computer were utilized in hopes that this Court would rule in Wenzel's favor on the [then-]pending motions for summary judgment.

Finally, even if this information was not destroyed intentionally (which is not what the court believes), Wenzel undertook a major risk by choosing to install the new operating system. As the experts at the hearing testified, every time someone decides to upgrade the operating system[,] they run

the risk of destroying information. So, at the very least, Wenzel affirmatively made a decision to risk losing all of the information contained on the computer. Information he was aware that he need to preserve[,] * * * as the litigation had been pending for more than a year. Wenzel did not seek advice of counsel or a technology expert before deciding to initiate an updated operating system.

(Emphasis added.) (Doc. #121, pp. 12-13).

{¶ 12} The trial court further found "a reasonable probability that access to [Wenzel's] emails prior to the reformatting of the hard drive and installation of the new operating system would have produced evidence favorable to Stratacache that is not otherwise obtainable." (*Id.*, p.14). Based on its determination that Wenzel's intentional actions would cause Stratacache "a large amount of prejudice" due to its inability to recover emails that might be relevant to the parties' competing claims (*id.*), the trial court imposed the "harsh sanction" of dismissing Wenzel's claims against Stratacache and Riegel[7] and granting default judgment in Stratacache's favor on its claims against Wenzel. (*Id.*, p. 17).

{¶ 13} The trial court denied in most respects Wenzel's subsequent motions to reconsider that sanctions decision (*see* Docs. #127, 129, 135, 136), but did agree to afford Wenzel a jury trial regarding the amount of damages due Stratacache on its default judgment against Wenzel. (Doc. #136). Ultimately, however, the parties reached an

---

[7] Although the October 3, 2017 decision referred specifically to dismissing only "Wenzel's Counterclaims against movants," a subsequent corrective order reflects the trial court's intent to dismiss Wenzel's "*Third Party Complaint* [against Riegel] as well as his counterclaims." (Emphasis sic.) (Doc. #134, p. 1).

agreement as to damages, pursuant to which the trial court issued a final judgment entry granting judgment by default in favor of Stratacache, Inc. and against Wenzel on counts two and three of Stratacache's complaint; [8] dismissing with prejudice Wenzel's counterclaims against Stratacache and third-party complaint against Christopher Riegel; and awarding Stratacache damages totaling $200,000. (Doc. #158).

{¶ 14} Wenzel appeals from that judgment, setting forth this sole assignment of error:

> The trial court erred by abusing its discretion and imposing sanctions of default[9] against * * * Wenzel for installing a Windows 10 update to his laptop resulting in data loss, and [for] late disclosure that he had Carbonite Premium and Lexar USB backups of his laptop's hard drive and PST files.

### Standard of Review

{¶ 15} "Courts have broad discretion over discovery matters, including motions for sanctions." *State ex rel. Duncan v. Middlefield*, 120 Ohio St.3d 313, 2008-Ohio-6200, 898 N.E.2d 952, ¶ 27, citing *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register,* 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 18. "It is exclusively within the discretion of the trial court to determine an appropriate sanction for a discovery infraction." *McKowen v. United Church Homes, Inc.*, 2d Dist. Greene No. 2005 CA 144, 2006-Ohio-6607, ¶ 10, citing *Russo v. Goodyear Tire & Rubber Co.*, 36 Ohio App.3d 175,

---

[8] *See* n.1, above.

[9] Wenzel characterizes as "default" the trial court's actions as to both Stratacache's claims against Wenzel (as to which the court did enter default judgment) and Wenzel's claims against Stratacache and Riegel (which the trial court dismissed). We have extended this argument by implication to the trial court's dismissal of Wenzel's own claims.

178, 521 N.E.2d 1116 (9th Dist.1987). Nevertheless, "[d]ue process requires that both parties have an opportunity to present arguments addressed to the trial court's exercise of this discretion before it makes a decision." *Bank One, NA v. Wesley*, 2d Dist. Montgomery No. 20259, 2004-Ohio-6051, ¶ 21.

{¶ 16} An appellate court reviews discovery rulings only for an abuse of discretion. *Duncan* at ¶ 27, citing *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 662 N.E.2d 1 (1996), syllabus. "An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable." *Id.*, quoting *State ex rel. Dreamer v. Mason,* 115 Ohio St.3d 190, 2007-Ohio-4789, 874 N.E.2d 510, ¶ 18. In order to constitute an abuse of discretion, the discovery sanction imposed "must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Vaught v. Cleveland Clinic Found.*, 98 Ohio St.3d 485, 2003-Ohio-2181, 787 N.E.2d 631, ¶ 13, quoting *Nakoff* at 256.

### Law Regarding Discovery Sanctions

{¶ 17} Pursuant to Civ.R. 37(A), a party to a civil action may move for an order compelling discovery from another party who has failed to respond in full to formal discovery requests. Rule 37(B) further provides as follows:

> If a party * * * fails to obey an order to provide or permit discovery, including an order made under * * * Civ.R. 37(A), the court may issue further just orders. They may include the following:
>
> * * *
>
> (b) Prohibiting the disobedient party from supporting or

opposing designated claims or defenses, or from introducing

designated matters in evidence;

* * *

(e) Dismissing the action or proceeding in whole or in part;

(f) Rendering a default judgment against the disobedient

party; * * *.

Civ.R. 37(B)(1).

{¶ 18} "In determining whether the sanction of dismissal is warranted, the trial court should consider 'the history of the case; all the facts and circumstances surrounding the noncompliance, including the number of opportunities and the length of time within which the faulting party had to comply with the discovery or the order to comply; what efforts, if any, were made to comply; the ability or inability of the faulting party to comply; and such other factors as may be appropriate.' " *Foley v. Nussbaum*, 2d Dist. Montgomery No. 24572, 2011-Ohio-6701, ¶ 31, quoting *Russo*, 36 Ohio App.3d at 178, 521 N.E.2d 1116. Because dismissal is a harsh sanction, it "should be reserved for cases when a party's conduct falls substantially below what is reasonable under the circumstances, evidences a complete disregard for the judicial system or the rights of the opposing party, or when the failure to comply with discovery orders is due to willfulness or bad faith." *Farmer v. PNC Bank, N.A.*, 2017-Ohio-4203, 92 N.E.3d 218, ¶ 28 (2d Dist.), quoting *Foley* at ¶ 20. *See also Allison v. Evenflo Co.*, 2d Dist. Montgomery No. 22613, 2009-Ohio-528, ¶ 9-10, quoting *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 632, 605 N.E.2d 936 (1992) (party's "negligent, irresponsible, contumacious or dilatory" conduct may justify dismissal with prejudice for failure to comply with discovery requests).

{¶ 19} We too have stated that default judgment is "a harsh sanction" that should be imposed only when a party's misconduct as to discovery "is due to willfulness or bad faith." *Winkle v. Co*, 2d Dist. Montgomery No. 27066, 2016-Ohio-6957, ¶ 77, quoting *Huntington Natl. Bank v. Zeune,* 10th Dist. Franklin No. 08AP-1020, 2009-Ohio-3482, ¶ 17.

### Wenzel's Assignment of Error

*a. Lack of Notice*

{¶ 20} In the first of three arguments encompassed within his single assignment of error, Wenzel contends that the trial court erred by entering discovery sanctions against him without first notifying him of its intent to do so. As to the sanctions of default[10] and dismissal in particular, Wenzel posits that the trial court itself was required to issue a direct warning of the prospect of dispositive sanctions. That argument is not well taken.

{¶ 21} Separate from Civ.R. 37(B)(1)(e)'s provision for dismissal as a discovery sanction, Civ.R. 41(B)(1) authorizes trial courts, "after notice to the plaintiff's counsel," to dismiss actions for failure to comply with any court order or procedural rule. The Supreme Court of Ohio has held that "the notice requirement of Civ.R. 41(B)(1) applies to *all* dismissals with prejudice, including those entered * * * for failure to comply with discovery orders." (Emphasis sic.) *Ohio Furniture Co. v. Mindala*, 22 Ohio St.3d 99, 101, 488 N.E.2d 881 (1986). "A dismissal on the merits is a harsh remedy that calls for the due process guarantee of prior notice." *Id.* Determining that Civ. 37(B) and Civ.R. 41(B)(1) must be read conjunctively with respect to dismissals with prejudice, the Supreme Court reasoned:

Notice of intention to dismiss with prejudice gives the non-complying party

---

[10] *See* n.9, above.

one last chance to obey the court order in full. The moving party should not be allowed to circumvent this protection by simply framing his motion in terms of a Civ.R. 37 sanction. Nor should a trial court on its own motion dismiss on the merits without prior notice.

*Id.*

{¶ 22} The Supreme Court subsequently clarified the form of notice required before dismissal for a discovery violation. *See Quonset Hut, Inc. v. Ford Motor Co.*, 80 Ohio St.3d 46, 684 N.E.2d 319 (1997). "For purposes of Civ.R. 41(B)(1), counsel has notice of an impending dismissal with prejudice for failure to comply with a discovery order when counsel has been informed that dismissal is a possibility and has had a reasonable opportunity to defend against dismissal." *Id.* at syllabus. The Supreme Court noted that counsel for the non-compliant plaintiff in *Quonset Hut* "was aware that [the defendant] had filed a motion requesting the court to dismiss [the plaintiff's] claim with prejudice" and also "filed a responsive motion urging that dismissal not be granted." *Id.* at 48. On that basis, the Supreme Court deemed it "apparent" that the plaintiff's attorney "was on notice of the possibility of dismissal with prejudice." *Id.*; *see also Sazima v. Chalko*, 86 Ohio St.3d 151, 155, 712 N.E.2d 729 (1999) (in *Quonset Hut*, "the fact that the defendant had filed a motion requesting the court to dismiss plaintiff's claim with prejudice constituted sufficient implied notice for purposes of Civ.R. 41(B)(1)," and "represents a rejection of the proposition that Civ.R. 41(B)(1) requires the trial court to expressly and unambiguously give actual notice of its intention to dismiss with prejudice").

{¶ 23} The notice Wenzel received before the trial court entered discovery sanctions against him fully conformed to the notice the Supreme Court found to be

adequate in *Quonset Hut*. The first sentence of the motion for discovery sanctions filed by Stratacache and Riegel detailed explicitly their request that the court "grant default judgment to Stratacache on its claims against Wenzel" and also "dismiss * * * Wenzel's claims against Stratacache." (Doc. #104, p. 1). Although that opening sentence did not specifically reference Wenzel's claims against Riegel (*see id.*), the motion elsewhere asked for dismissal of "Wenzel's claims" generally, without distinguishing between counterclaims and third-party claims. (*Id.*, pp. 15, 16). The parties' joint reply likewise requested that all of "Wenzel's claims" be dismissed, not limited to his claims against Stratacache. (Doc. #112, p. 18). Further, simply by appearing as a named movant, Riegel conveyed his joinder in the requests for dismissal repeated throughout the joint motion, and the arguments advanced therein were equally applicable to Wenzel's claims against Riegel. (*See* Doc. #104, pp. 11-15). Wenzel was aware that dismissal of his claims was a possibility.

{¶ 24} Wenzel also was afforded "a reasonable opportunity to defend against" the opposing parties' request for dismissal. *See Quonset Hut* at syllabus. Wenzel filed a 21-page opposing memorandum that the trial court cited in its sanctions decision. More than 10 days before the oral hearing on the parties' motions for discovery sanctions, Wenzel also received notice of the trial court's intent to hold such a hearing, and he appeared and testified at that hearing. The process followed in this case sufficed to satisfy Civ.R. 41(B)(1)'s notice requirement prior to dismissal with prejudice, in accordance with *Quonset Hut*.

{¶ 25} Furthermore, this court has determined that Civ.R. 41(B)(1)'s notice requirement does not apply to discovery sanctions granting default judgment, as opposed

to entries of dismissal. *See Baker v. Edmonds*, 2d Dist. Clark No. 2002-CA-17, 2003-Ohio-1030, ¶ 21. *Accord Sutton v. Douglas*, 9th Dist. Summit No. 26953, 2014-Ohio-1337, ¶ 13 (as to entries of default judgment, "there is no due process requirement that a court provide an additional round of notice to the defendants after a discovery violation occurs"). Although we acknowledged that Civ.R. 55(A) "arguably requires some sort of notice" before judgment by default is entered as a discovery sanction, *Baker* at ¶ 22, we were not required to resolve that question in *Baker*, given our conclusion that the trial court's order did provide adequate notice of the court's intent to enter default judgment under Civ.R. 37(B)(1). *Id.* at ¶ 23. We also have stated that "[i]mplied notice of the possibility of a default judgment is all that is needed to satisfy the due process guarantees" when granting default judgment under Civ.R. 37(B). *Associated Business Inv. Corp. v. CTI Communications Inc.*, 2d Dist. Montgomery No. 19211, 2002-Ohio-6385, ¶ 23. Having determined above that Wenzel received notice adequate to satisfy Civ.R. 41(B)(1)'s notice requirement for dismissal, we likewise conclude that he received proper notice of the possibility that default judgment would be entered against him on Stratacache's claims.

{¶ 26} We do not agree with Wenzel's suggestion that the trial court erred by failing to issue its own prior warning regarding the possibility that it might dismiss Wenzel's claims or enter default judgment against him. In the first instance, the trial court's initial order compelling Wenzel to produce the IBM ThinkPad did mention the possibility of "sanctions for failure to comply with discovery," albeit briefly. (*See* Doc. #79, p. 2). Furthermore, the decisions Wenzel advances as support for the proposition that notification directly from the court was required do not compel the conclusion for which

he advocates. As noted above, the Supreme Court in *Quonset Hut* held that a party's attorney "was on notice that the action could be dismissed" by virtue of the opposing party's motion for dismissal with prejudice and the non-compliant party's opportunity to respond to that motion. *Quonset Hut*, 80 Ohio St.3d at 48-49, 684 N.E.2d 319.

{¶ 27} Neither is Wenzel's position bolstered by his citation to this court's decision in *Farmer*, 2017-Ohio-4203, 92 N.E.3d 218. The facts in *Farmer* differ from those in *Quonset Hut*, in that the trial court in *Farmer* did caution the non-compliant party through a prior discovery order that such party faced the prospect of discovery sanctions, including "judgment by default," for failure to timely comply. *See Farmer* at ¶ 19. In upholding that form of notice, however, we did not hold that *only* notice directly from the court could suffice. Nothing in *Farmer* contravenes *Quonset Hut's* allowance for broader forms of notice. Whether in certain situations it would be better to include in discovery orders an explicit warning about possible sanctions for failure to comply, the law is clear that *Quonset Hut* "represents a rejection of the proposition that Civ.R. 41(B)(1) requires the trial court to expressly and unambiguously give actual notice of its intention to dismiss with prejudice." *Sazima*, 86 Ohio St.3d at 155, 712 N.E.2d 729.

{¶ 28} The portion of Wenzel's assignment of error based on an alleged lack of notice of the prospect of discovery sanctions is overruled.

*b. Discovery Violations Irrelevant as to Wenzel's Claims*

{¶ 29} The second argument offered in support of Wenzel's assignment of error asserts that any emails removed from the IBM ThinkPad had no bearing on Wenzel's counterclaims and third-party claims, and that the loss of such evidence therefore did not justify the dismissal of those claims. We find no error in the trial court's determination to

the contrary.

**{¶ 30}** Stratacache's initial motion seeking to compel production of the IBM ThinkPad highlighted the importance of the May 2012 email Wenzel denied having received about commission rates, terming that email "an item of significance to both [Stratacache's] and [Wenzel's] claims." (Doc. #65, p. 8). Wenzel himself deemed the May 2012 email so pivotal to his claims for unpaid commissions that he sought through a motion in limine to prevent Stratacache from presenting any evidence regarding that email. (*See* Doc. #111, pp. 21-26, 27-28). While Stratacache also sought to compel production of the computer in order to search for emails between Wenzel and Stratacache customers that would have been pertinent to Stratacache's claims alone, discovery of the disputed May 2012 email on Wenzel's computer would have been crucial to Stratacache's ability to defend against Wenzel's claims – i.e., had Stratacache been able to prove that Wenzel in fact received that email, Wenzel presumably would be left unable to support his claim for unpaid commissions in excess of the one percent rate.

**{¶ 31}** Although Wenzel contends that the May 2012 email never existed on his laptop, the trial court did not abuse its discretion by declining to accept Wenzel's self-serving representation to that effect. The trial court found that the changes Wenzel made to the computer, after knowing that he was required to produce it for examination by Stratacache's expert, left Stratacache unable to disprove Wenzel's claimed lack of receipt of that email. The court's conclusions were based on the testimony of Stratacache's expert, Greg Kelley, whom the trial court found more persuasive than Wenzel's expert, Chris Ljunggren.[11] The trial court accepted Kelley's opinion that "[t]he installation of the

---

[11] Specifically, the trial court stated that "the comparison of the qualifications between

new [Windows 10] operating system overwrote all the information, removing any chance of recovering the information." (Doc. #121, p. 13). Despite Ljunggren's claim to have fully restored the computer using Wenzel's backups, the court further concluded, based on Kelley's testimony, that it "will never know * * * whether Wenzel deleted any information." (*Id.*, p. 14). The possible deletions could have included the disputed May email as well other information on the computer that might have proven useful to Stratacache.

{¶ 32} We are bound by the trial court's credibility determinations, which led to that court's ultimate conclusion that Wenzel may have destroyed evidence so critical to Stratacache's and Riegel's ability to defend as to warrant dismissal of Wenzel's counterclaims and third-party complaint. It is true that Stratacache has not demonstrated what, if anything, was deleted from the computer, or whether any deletions, if they occurred, involved information that would have been favorable to Stratacache's case. However, Stratacache's inability to offer such proof is a product of Wenzel's actions. Where "it is possible – and even likely – that [electronic devices] contained relevant information," an opposing party is entitled to discovery of that information. *See, e.g., East Coast Test Prep, LLC v. Allnurses.com, Inc.*, D.Minn. Civil No. 15-3705, 2019 WL 1487812, * 6 (Apr. 4, 2019). The trial court did not abuse its discretion by determining that no sanction short of dismissal of Wenzel's claims "can adequately level the playing field or erase the prejudice suffered by" Stratacache and Riegel. (Doc. #121, p. 17).

{¶ 33} The portion of Wenzel's assignment of error alleging that the absence of evidence did not assist his own claims and that the trial court erred by dismissing those claims is overruled.

---

Ljunggren and Kelley weigh[s] in favor of Kelley." (Doc. #121, p. 7).

c.        *Proportionality of Sanctions to Violation*

**{¶ 34}** Finally, Wenzel contends that any discovery sanction against him should have been limited to ordering him to pay Stratacache's costs related to its motion to compel and the continuance of the trial date. Wenzel asserts that such a sanction "would make Stratacache whole," and that trial court abused its discretion by imposing the more drastic sanctions it chose instead.

**{¶ 35}** When considering what sanction to impose for a party's failure to comply with discovery, " 'the trial court must consider the posture of the case and what efforts, if any, preceded the noncompliance and then balance the severity of the violation against the degree of possible sanctions, selecting that sanction which is most appropriate.' " *Dayton Modulars, Inc. v. Dayton View Community Dev. Corp.*, 2d Dist. Montgomery No. 20894, 2005-Ohio-6257, ¶ 10, quoting *Russo*, 36 Ohio App.3d at 178, 521 N.E.2d 1116. In reversing a trial court's dismissal of an action with prejudice as a sanction for a party's failure to comply with discovery, we have considered whether "[a] more proportionate sanction, in line with the appellees' prejudice," would have been appropriate. *Levorchick v. DeHart*, 119 Ohio App.3d 339, 345, 695 N.E.2d 303 (2d Dist.1997). The Tenth District Court of Appeals also has indicated that the sanctions imposed for discovery violations should be "proportional to the extent or frequency of the violations." *Gebi v. Worku*, 10th Dist. Franklin No. 17AP-75, 2017-Ohio-8462, ¶ 16 (affirming serious sanction imposed for litigant's "repeated pattern of noncompliance" with discovery requests).[12]

---

[12] The federal courts also recognize that dismissal may be an appropriate sanction for discovery violations "that exceed[ ] simple inadvertence or mistake." *See, e.g., Flextronics Internatl., USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F.Supp.3d 896, 907 (N.D.Ill.2017), quoting *Ramirez v. T & H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir.2016). In *Flextronics*, the trial court dismissed a corporate party's counterclaim as "proportionate

{¶ 36} In cases involving the alleged "spoliation" of evidence, "the intent of the spoliator in destroying or altering evidence can be inferred from the surrounding circumstances." *Hetzer-Young v. Elano Corp.*, 2d Dist. Greene No. 2013-CA-32, 2014-Ohio-1104, ¶ 29, quoting *Cincinnati Ins. Co. v. General Motors Corp.*, 6th Dist. Ottawa No. 94OT017, 1994 WL 590566, *3 (Oct. 28, 1994). In such cases, "[t]he test for prejudice is whether there is a reasonable possibility, based on concrete evidence, that access to the evidence which was destroyed or altered, and which was not otherwise obtainable, would produce evidence favorable to" the proponent of the missing evidence. *Id.* at ¶ 30. "Review of a spoliation ruling 'requires a determination of whether the trial court abused its discretion in determining an appropriate sanction.' " *Id.* at ¶ 31, quoting *Holiday v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 86069, 2006-Ohio-284, ¶ 26.

{¶ 37} In this case, we cannot say that the trial court exceeded the scope of its discretion by choosing a discovery sanction that resolved all remaining claims in favor of Stratacache and Riegel and against Wenzel. In its initial sanctions decision, the trial court acknowledged that the sanctions of default judgment and dismissal are "harsh." (Doc. #121, p. 17). Accordingly, the court first considered a lesser sanction – "that all inferences be drawn adverse to Wenzel" – before concluding that such sanction would be impractical for purposes of a jury trial as well as "inadequate * * * because of the substantial prejudice that Stratacache ha[d] suffered" due to Wenzel's actions. (*Id.*, p. 15). "[S]imply telling a trier of fact that the [missing] emails would have been helpful to [Stratacache and Riegel]

---

to the wrong" after that corporation's CEO fabricated an email to strengthen his company's claim for damages. *See id.* at 913. Although Wenzel's conduct involved eliminating rather than creating an email that may have affected the damages available on his counterclaim, the same reasoning applies.

would not remove the prejudice [those parties] have suffered by not having information to present in the first place." (*Id.*). The trial court further opined that "such an adverse inference would effectively compel a verdict" in favor of Stratacache and Riegel, "[b]ut * * * only * * * after Stratacache had consumed valuable judicial resources and incurred substantial litigation expenses." (*Id.*).

{¶ 38} Based on its findings that "Wenzel willfully and purposefully destroyed evidence" he knew to be relevant to pending litigation, and that "the amount of information destroyed will never be known to anyone but Wenzel," the trial court determined that default judgment and dismissal were "the proper sanctions to punish Wenzel and deter future discovery violations." (*Id.*, pp. 16-17). Consideration of the factors outlined in *Dayton Modulars* confirms that the record contains evidence to support the trial court's conclusions. *Dayton Modulars,* 2d Dist. Montgomery No. 20894, 2005-Ohio-6257, at ¶ 10. It is undisputed that Wenzel intentionally implemented changes to the IBM ThinkPad not only after opposing counsel requested its production, but after the date that the laptop was supposed to have been produced. As to the posture of the case, the trial court noted that Wenzel did not offer Stratacache and Riegel access to the backed-up data "until the date the case was originally set for trial." (Doc. #121, p. 5).

{¶ 39} Further, Wenzel continued to resist production of the laptop for forensic examination, advancing privacy concerns, despite knowing that the emails his opponents sought already had been cleared. He did not disclose that fact to Stratacache or to the trial court until his actions had been uncovered by Stratacache's computer expert, and only immediately prior to the sanctions hearing did Wenzel disclose that backups of at least some deleted data existed. The trial court reasonably concluded that Wenzel had

engaged in a pattern of repeated discovery violations with serious consequences for the opposing parties.

{¶ 40} Although Wenzel faults the trial court for not ordering Stratacache's expert to re-examine the computer after Wenzel's expert purportedly restored the missing data, the trial court did not err in that regard. Ample opportunity existed for Wenzel to have disclosed the missing data and the existence of backups prior to the date of the sanctions hearing. In addition, Stratacache's expert, whom the trial court found to be more credible, testified that the backups Wenzel created would not have saved a forensic image of the computer's content prior to the changes Wenzel implemented, making it impossible to later determine whether Wenzel had deleted some information not included in the backups. Also, Wenzel's own brief in opposition to sanctions admitted that the deletion protocol set up on his laptop "makes data forensics and file recovery with this type of laptop nearly impossible." (Doc. #111, p. 12).

{¶ 41} In light of such evidence, and given the nature and extent of Wenzel's discovery violations, the trial court was not required to force Stratacache's expert to pore through Wenzel's "restored" emails in what that expert already had testified was likely to be a futile exercise for purposes of determining whether Wenzel may have deleted additional data not included in the backups. The trial court did not abuse its discretion by ordering dismissal of Wenzel's claims and default judgment in favor of Stratacache without affording Wenzel yet another opportunity to comply with Stratacache's overdue discovery requests. Wenzel's assignment of error on that basis is overruled.

## Conclusion

{¶ 42} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Jonathan R. Secrest
Sara H. Jodka
Thomas M. Green
Jonathan F. Hung
Hon. Dennis J. Adkins